Filed 11/19/13  In re Y.G. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re Y.G. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,       Plaintiff and Respondent,         v.  JUAN A. et al.,       Defendants and Appellants. | G048398  (Super. Ct. Nos. DP020077  & DP020078)  O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Richard Y. Lee, Judge.  Affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant Juan A.

Law Offices of Terry Anderson and Terry Anderson for Defendant and Appellant O.G.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

## INTRODUCTION

Juan A. (Juan) the father, and O.G. (O.G.), the mother, of the minors Y.G. and E.G. have appealed from the juvenile court's order terminating their parental rights. Both parents maintain the court should not have terminated their rights because Y.G.'s relationship with her adult half-sister, Karina, qualified for the sibling relationship exception to Welfare and Institutions Code section 366.26, subdivision (c).[1] The juvenile court considered this exception and concluded that Juan and O.G. did not meet their burden to establish its application.

We affirm the order. The juvenile court's determination rests on substantial evidence. Although Y.G.'s relationship to Karina is important, it is not important enough to override her and her younger sister's pressing need for a stable, permanent home. Their foster parents are willing and able to adopt both children. The parents have given us no reason to disturb the court's determination that the sibling-relationship exception did not apply.

## FACTS

In July 2010, Juan was driving in Stanton when he was pulled over by an Orange County deputy sheriff because of illegally tinted car windows. In the car with Juan were his two daughters Y.G. (six years old), E.G. (two months old), their mother, O.G., and another adult. A search of the car revealed 3.3 pounds of heroin in E.G.'s diaper bag. Although none of the adults was carrying drugs, Y.G. had a baggie containing two grams of cocaine in her pocket. Juan and O.G. were arrested, and Orange County Social Services Agency (SSA) picked up the two children. A subsequent search of the house in Panorama City where the children had been living with their mother, maternal aunt, and maternal grandmother turned up 5 pounds of cocaine in the garage.[2] Investigators estimated the cocaine to have a street value of $50,000 and the heroin from

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] The officers searching the house also found bullets in a jacket pocket.

the diaper bag to have a street value of $100,000. O.G. had no criminal history, but Juan had several narcotics-related arrests on his record.

In September 2010, O.G. pleaded guilty to felony possession of a controlled substance and was sentenced to two years in state prison. She was released to immigration in April 2011. Subsequently she was deported to Mexico, where for many months she failed to maintain contact with her attorney or the social workers assigned to the case.[3]

Juan pleaded guilty to felony sale or transport of a controlled substance in January 2011 and was sentenced to five years in prison with a concurrent three-year enhancement. He was sent to Wasco to serve his sentence.

Y.G. and E.G. have a half-sister, Karina, who had been a ward of the juvenile dependency system in Los Angeles County and who was adopted by O.G.'s sister, the children's maternal aunt in Panorama City. Karina turned 18 in May 2013.

The court found jurisdiction over Y.G. and E.G. in August 2010. The children were placed in foster care. Reunification services for both parents were terminated on February 2, 2012.

The children visited with Karina once a month, and Y.G. spoke to her on the telephone during the week.[4] The visits with Karina usually consisted of Y.G.'s answering Karina's questions with the briefest possible response and Y.G.'s playing games on Karina's cell phone. Y.G. refused to visit with her maternal aunt (Karina's adoptive mother) and ignored her aunt and grandmother when she visited with Karina. She also told the social worker that she did not want to increase her visits with Karina or talk with her more on the telephone.

---

[3]     In March 2012, O.G. contacted SSA and began having weekly phone calls with Y.G. Two months later, Y.G. asked her social worker to cut down the phone calls with O.G.

[4]     Y.G. would sometime refuse to speak to Karina on the phone and, when she did take the call, would insist on keeping the conversations short.

3

At one point, a family expressed an interest in adopting the girls, and they had a series of preadoptive visits. These efforts turned out very badly for Y.G. Although the visits appeared to go well at first, the adoption was abandoned after Y.G. tearfully confided to the judge in chambers that she wanted to go back to her original foster parents. The children went back to the foster home.

After the abortive adoption attempt, the children's foster parents, who had initially stated that they would not adopt – so that the biological parents could regain custody – expressed an interest in adopting the children. The foster parents stated they would be willing to continue visits between Karina and Y.G. after adoption.

A bonding study was performed in early 2013. The psychologist stated Y.G. had a strong bond with Karina, but her most important bond was with her little sister, E.G. Y.G.'s bond with Karina, the psychologist explained, was not due to the amount of time they had recently spent together, but rather to Y.G.'s sense that Karina represented a link to Y.G.'s family and to her former life with her parents.[5] The psychologist concluded that the ideal situation for Y.G. would be a secure home "with a stable, committed set of parents" while maintaining her relationship with Karina. But if there had to be choice, a secure home was more important.

The court found the children were adoptable and neither Juan nor O.G. had met their burden to establish the basis for the sibling relationship exception. The court terminated Juan's and O.G.'s parental rights on April 29, 2013.

Juan and O.G. have appealed separately from the termination of their parental rights on the ground the court improperly discounted the statutory sibling relationship exception. They argue Y.G.'s relationship with her half-sister Karina meets

---

[5]     The psychologist stated that Y.G.'s connection with Karina allowed her to feel "'whole,'" "intact," and "not adrift in a tenuous living situation (with moves she cannot anticipate always in the offing)."

4

the standard for this exception, precluding the termination of their parental rights as to Y.G. and E.G.[6]

## DISCUSSION

The juvenile court ordered Juan's and O.G.'s parental rights terminated pursuant to section 366.26, subdivision (c), which provides in pertinent part:

"If the court determines . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption.  The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted. . . ."

Juan and O.G. contend the court should not have terminated their rights because one of the exceptions to termination applied:

"Under these circumstances, the court shall terminate parental rights unless either of the following applies:  [¶] . . . [¶]

"(B) The court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances:  [¶] . . . [¶]

"(v) There would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including,

---

[6]    O.G. has also appealed from the juvenile court's denial of her concurrent motion under section 388 to change its order regarding placement of the children in O.G.'s sister's home, the Panorama City home where the police found five pounds of cocaine in the garage.  Juan  made a motion to place the children with this relative in July 2011.  The court heard the motion on February 2, 2012, along with the termination of reunification services, and denied it.

    The court denied O.G.'s subsequent motion on several grounds, one of which was that O.G. had failed to appeal from the denial of the order on Juan's original motion when it was issued, and that her section 388 motion was, in essence, a request to reconsider the earlier ruling.  "An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an  appeal has passed."  (*In re Edward H.* (1996) 43 Cal.App.4th 584, 590-591.)

    In any event, O.G. provided only minimal argument and has failed to cite any authority for her contention that the court should not have denied her motion.  She does not even mention the applicable standard of review:  abuse of discretion.  (See *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880.)  We therefore treat the issue as waived.  (See *Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228.)

but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

Specifically Juan and O.G. maintain that Y.G.'s relationship with Karina qualifies as a sibling relationship significant enough to overcome the legislative preference for adoption as a permanent plan for Y.G. and E.G.[7] The parents have the burden of showing the existence of the circumstances supporting the application of an exception to termination. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 574.) We affirm the juvenile court's determination regarding exceptions to termination of parental rights if it is supported by substantial evidence. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) It is the appellant's burden to show that a finding is not supported by substantial evidence. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

To begin with the obvious, there is no evidence whatsoever in the record of a bond between E.G., the younger of the two girls, and Karina. This is not surprising, since E.G. was three months old when she went to live with her foster parents. She cannot possibly have any memory of living with Karina, and therefore the argument that a relationship with her is necessary to feel "whole" or "intact" has no application to E.G. Juan and O.G. have clearly failed to carry their burden regarding the sibling exception as to this child.

E.G. and Y.G., however, have a very strong bond. They have lived together since E.G. was born, and the evaluating psychologist counseled against splitting them up. All agree that their bond is the major one in both of their lives, and Y.G. has repeatedly demonstrated that she regards herself as her little sister's protector.

---

[7] Neither Juan nor O.G. disputes the juvenile court's adoptability finding for either Y.G. or E.G.

The main issue with respect to Y.G. is not, as her parents have framed it, maintaining parental rights to forestall interference with her relationship with Karina.  As the juvenile court pointed out, Karina is an adult.  Her relationship with Y.G. depends not on whether Juan and O.G. have parental rights, but rather on her own choice.  (See *In re J.T.* (2011) 195 Cal.App.4th 707, 719.)  She is, moreover, now the adopted daughter of O.G.'s sister; Juan and O.G. have no parental relationship to her at all, even as adults.  (See *In re Erik P.* (2002) 104 Cal.App.4th 395, 403 ["Where the parents' continuing relationship with the dependent child, or absence thereof, can in no way affect the nature of the sibling  relationship because the parent no longer has a relationship with the sibling, the exception does not apply."]  Neither Juan nor O.G. has any control over Karina's maintaining a relationship with Y.G. or would have any such control if they still had their parental rights.[8]

What Juan and O.G. really want is a continuation of the court's supervision of the foster parents and, most importantly, its coercive power over them.  If for some reason the foster parents make a relationship between Karina and Y.G. difficult or impossible – by offering to move to Peru, for example – Juan and O.G. want the court to be able to step in and stop them.  If the girls are adopted, the court loses this power.  (§ 366.29.)

This is not a good enough reason to forgo adoption.  Both girls need a stable, permanent home, and they need it together.  The foster parents are able and willing to provide this home.  Juan and O.G. did not submit evidence of a bond between Karina and Y.G. strong enough to override the obvious benefits adoption would confer on both children, not the least of which is that the girls could grow up together in a permanent home with the same set of parents.

---

[8]     If they retained their parental rights, they could, of course, forbid contact between Y.G. and Karina, but they do not appear to be concerned about losing the ability to prevent the relationship.

The prospective adoptive parents have indicated that they have no intention of interfering with Y.G.'s relationship with Karina, and, indeed, their reluctance to adopt at first reflects their efforts to maintain a place in the children's lives for their relatives. It may be, however, that at some future time, the family could move away from Southern California, impeding physical contact between Y.G. and Karina. But that could happen even if the younger children were with a biological parent. If the girls had accompanied O.G. to Mexico after she was deported, for example, Y.G. would probably not be seeing much of Karina.

The need for a stable home is particularly acute in Y.G.'s case. Being able to recall the events that landed her in the dependency system, she has exhibited a great deal of anxiety about permanence. Her unsuccessful sojourn at a prospective adoptive home heightened this anxiety, and her insistence that she wants to stay with her foster parents, who have cared for her by now for several years, underscores the importance of a "forever home" for this child. Although a relationship with Karina is to be encouraged, it does not trump the legislative preference for adoption and permanence.

## DISPOSITION

The order terminating Juan's and O.G.'s parental rights is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

8