Filed 3/14/14  In re R.A. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re R.A. et al., Persons Coming Under the Juvenile Court Law. | C074489 |
| YOLO COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, Plaintiff and Respondent, v. M.C., Defendant and Appellant. | (Super. Ct. Nos. JV11340, JV11341) |

Appellant M.C., the mother of the minors R.A. and J.C., appeals from the juvenile court's orders terminating parental rights.  (Welf. & Inst. Code, §§ 395, 366.26.)[1] Mother contends the juvenile court erred in failing to apply the beneficial parent/child relationship exception to adoption.  We affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2011 the Yolo County Department of Employment and Social Services (DESS) filed dependency petitions (§ 300) on behalf of three-year-old R.A. and newborn J.C., alleging that mother and J.C. tested positive for methamphetamine at birth, mother had a history of substance abuse and substance abuse related crimes, and she failed to follow through with medical appointments for J.C., who had to be hospitalized after losing 15 ounces in the four days since his birth. The minors were detained later that month.

The juvenile court modified and sustained the petitions in September 2011. It also directed DESS to file an amended petition reflecting a stipulation that R.A.'s father could not care for him because he was incarcerated and had a history of drug use. In October 2011 DESS filed a subsequent petition (§ 342) regarding R.A.'s father consistent with the juvenile court's orders at the jurisdiction hearing. The juvenile court ordered reunification services for both parents later that month.

A March 2012 report noted the minors were developing appropriately in their Sacramento foster placement. Mother had three supervised visits per week but consistently missed one to two visits each week after the minors were moved to Sacramento. A social worker offered bus passes to mother but she did not express a need for or interest in them.

The juvenile court continued services for both parents in May 2012.

In September 2012 DESS reported that R.A. sometimes yelled, kicked, and screamed when the foster parents tried to give him direction. He also hit mother during visitation, but this had stopped recently. He participated in weekly therapy to learn how to manage his anger more effectively. Mother had two one-hour visits each week but missed two consecutive visits at the end of August 2012.

The juvenile court continued services at the November 2012 12-month hearing. The juvenile court stated it would revisit its ruling later that month if mother did not take

2

a drug test after the hearing. Later that month, the court suspended mother's visitation until it resolved whether she had tested clean for drugs. In December 2012 the juvenile court ruled it would reinstate visits after two clean tests from mother.

The January 2013 report recommended terminating reunification services. Mother tested positive for methamphetamine in November 2012. Visitation had not yet been resumed as she had failed to submit two clean drug tests as per the juvenile court's order.

The juvenile court terminated reunification services in February 2013. R.A. was meeting his developmental milestones and was doing much better in anger management therapy. J.C. was developing on track and DESS had no concerns about his mental or emotional status.

The June 2013 section 366.26 report stated the minors had been in their current foster home since February 2012. J.C. was a typical two year old with no mental health issues. R.A., a five-year-old boy, preferred to dress like a girl and chose a female name for himself. The boy's therapist and foster mother reported his struggles seemed to include internal conflict surrounding the unexplained absence of his mother and his affection for his prospective adoptive family. R.A. was characterized as a strong-willed boy who periodically inquired about his mother.

R.A. was given a mental health assessment by a clinical psychologist in April 2013. The psychologist concluded there was a good possibility that R.A. was a transgender child. The psychologist also stated, "At the same time, [R.A.] is a child in the foster care system who was abruptly removed from his mother's care and finally placed in a loving fost-adopt situation in which he may very well be adopted, with his birth mother losing her parental rights." While the new family was "a very good one" for R.A., the psychologist concluded "at the same time it leaves him in a gender bind." R.A. reported that he misses his mother and that he "gets crazy and wild when he thinks about her." The psychologist strongly recommended that R.A. "be allowed to continue to explore gender so that [he] can move beyond the gender bind he is in, associated in his

3

mind with returning home to his birth mother vs. staying with his new family." The prospective adoptive parents were doing an excellent job of supporting the minor; and "without that support [R.A.] would be at risk for several psychological problems."

The adoption assessment reported that R.A. viewed the prospective adoptive parents as his psychological parents. He sought them out to have his needs met. R.A. also initiated and received affection from them. The prospective adoptive parents had been the boys' foster parents since February 2012 and expressed a desire to adopt. The prospective adoptive family was against a postadoption contact agreement because R.A.'s father had made threats of physical violence against the family. The report concluded the minors were likely to be adopted and recommended terminating parental rights.

DESS submitted on the reports at the July 2013 section 366.26 hearing. The juvenile court granted counsel for mother's motion to take judicial notice of prior testimony from a social worker that mother's visits were positive. The court also took judicial notice of its prior ruling that mother had to test clean twice before visits would be reinstated and took testimony on mother's drug testing. No further argument was presented, and the juvenile court terminated parental rights.

## DISCUSSION

Mother's sole contention is that the juvenile court erred in failing to apply the beneficial parent/child exception to adoption.

" 'At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must make one of four possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. [Citation.]' [Citations.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.)

There are only limited circumstances permitting the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the

4

child." (§ 366.26, subd. (c)(1)(B).) One of these is where the parent has maintained regular visitation and contact with the child and the child would benefit from continuing the relationship, often referred to as the beneficial parental relationship exception. (§ 366.26, subd. (c)(1)(B)(i).) The "benefit" to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." ( *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 (*Autumn H.*); see *In re C.F.* (2011) 193 Cal.App.4th 549, 555 (*C.F.*).) Even frequent and loving contact is not sufficient to establish this benefit absent a substantial, positive emotional attachment between parent and child. (*C.F.* at p. 555; *Autumn H.* at p. 575.)

"Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350 (*Jasmine D.*).)

The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights. (*C.F.*, *supra*, 193 Cal.App.4th at p. 553.)

The parent must establish the existence of the factual predicate of the exception—that is, evidence of the claimed beneficial parental relationship—and the juvenile court must then weigh the evidence and determine whether it constitutes a compelling reason for determining detriment. Substantial evidence must support the factual predicate of the

5

exception, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.) " '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . . Broad deference must be shown to the trial judge.' " (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1351.)[2]

It was mother's burden to raise this exception at the section 366.26 hearing and she failed to do so. Failure to raise this statutory exception to adoption forfeits the issue for purposes of appeal. (*In re Erik P.* (2002) 104 Cal.App.4th 395, 403; *In re Daisy D.* (2006) 144 Cal.App.4th 287, 291-292.)

Mother's claim that the juvenile court did not allow her to raise the exception is wrong. The juvenile court allowed mother's counsel to present evidence of recent clean drug tests and to persuade the court to take judicial notice of prior testimony that mother's visits were positive. While the juvenile court rendered its decision immediately after the parties stated they had no further evidence to submit, there is no reason to believe it would have refused to entertain argument on the parent/child exception to adoption. It was not the juvenile court's duty to ask for arguments on the parent/child exception as mother had the burden of raising and proving that exception.

---

[2] We acknowledge the parties' discussion in their respective briefing regarding the split of authority as to whether the substantial evidence standard, the abuse of discretion standard, or a hybrid standard applies in reviewing the juvenile court's rejection of exceptions to adoption. We shall apply the hybrid standard but note that "[t]he practical differences between the two standards of review are not significant" in this context. (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1351.)

Mother's claim that counsel raised the exception by moving for judicial notice regarding the beneficial nature of the visits is equally unavailing. This evidence was tangentially related to the strength of the parent/child bond and established that at least some visits took place. However, it does not present the court with any argument that visitation was consistent or that severing the parent/child bond would be detrimental to the minor. Presenting some evidence that could provide partial support for part of an exception to adoption is not the same as raising the exception in the juvenile court.

Since mother's counsel neither mentioned nor argued for the exception, we conclude it was not raised in the juvenile court and mother's contention is forfeited.

Even had the contention been timely and effectively raised, mother would not prevail on the merits. The six-month report noted that every week, after visits were moved to Sacramento, mother missed one or two of her thrice weekly visits, and she did not accept DESS's offers for transportation. While she had missed only a few recent visits at the time of the September 2012 12-month report, her visits were suspended in November 2012 until she gave two clean drug tests, which she never did. Thus, mother did not maintain regular contact with the minors. Moreover, there is substantial evidence that severing the parent/child bond would not greatly harm the minors. J.A. had spent all of his life away from mother, and R.A. had spent nearly half his young life in another's care. While R.A.'s gender issues might be related to separation from his mother, the psychologist concluded that if this issue existed, it was related to his reconciling a desire to return to the mother with his bond with the prospective adoptive parents. Applying the exception and putting R.A. in guardianship would not alleviate this issue, as it would not return him to his parents. It would, however, deprive him of a more permanent relationship with the family identified by the psychologist as best able to help him address his gender issues. We therefore conclude it was not an abuse of discretion to decline to apply an exception to adoption and terminate parental rights.

**DISPOSITION**

The juvenile court's orders are affirmed.

                                             RAYE             , P. J.

We concur:

           ROBIE          , J.

           MAURO        , J.