Filed 4/30/14  In re B.B. CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

In re B.B., A Person Coming Under the
Juvenile Court Law.

RIVERSIDE COUNTY DEPARTMENT
OF PUBLIC SOCIAL SERVICES,

      Plaintiff and Respondent,

v.

L.B.,

      Defendant and Appellant.

E059372

(Super.Ct.No. SWJ1200184)

**OPINION**

APPEAL from the Superior Court of Riverside County.  John M. Monterosso,
Judge.  Affirmed.

Samantha A. Greene, under appointment by the Court of Appeal, for Defendant
and Appellant.

Pamela J. Walls, County Counsel, and Carole A. Nunes Fong, Deputy County
Counsel, for Plaintiff and Respondent.

1

L.B. (Mother) appeals after the termination of her parental rights to B.B. at a Welfare and Institutions Code section 366.26[1] hearing. Mother makes two claims on appeal that (1) the juvenile court erred by denying her section 388 petition; and (2) the beneficial relationship exception pursuant to section 366.26, subdivision (c)(1)(B)(i) applied to preclude the termination of her parental rights. We affirm the juvenile court's orders denying Mother's section 388 petition and terminating her parental rights.

I

PROCEDURAL AND FACTUAL BACKGROUND

A. *Detention*

On January 23, 2012, a general neglect referral was received by the Riverside County Department of Public Social Services (Department) for B.B.'s sibling, A.B., who was born on June 23, 2010.[2] A.B. was living with her paternal grandmother, T.A. T.A. had been taking pain medication and it was reported that it was giving her thoughts of harming A.B. T.A. was the primary caregiver because it was reported that Mother and A.B.'s father (Father)[3] were addicted to methamphetamine. T.A. had stopped taking the pain medication. She insisted she only had thoughts of harming herself, not A.B. T.A.

---

[1]   All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]   A.B. was already living with T.A. and was not involved in the instant dependency proceedings. Legal guardianship of A.B. was granted to T.A. during the pendency of these proceedings.

[3]   Father's rights were also terminated as to B.B. in the proceeding but he has not filed an appeal.

only admitted that Mother used drugs in the past but claimed she was taking care of A.B. because Mother wanted to have fun and was not "really a mom." A.B. was back living with T.A. and T.A. had applied for legal guardianship because Mother and Father did nothing to take care of A.B.

On February 9, 2012, the Department met with Father and Mother, who were living with Father's grandparents. Father appeared to be under the influence of methamphetamine. Mother was also living in the home. Mother claimed T.A. "stole" A.B. from her and Father. Mother appeared to be under the influence of methamphetamine and admitted using a few days prior. Mother reported that B.B. had been born on January 28, 2012. There were no complications with the birth and B.B. was born drug free. B.B. appeared in good condition and bonded to Mother and Father. A urine test for drugs was taken from Mother and Father.

Mother and Father were given a safety plan and were allowed to retain custody of B.B. They were to remain drug free and enroll in Family Preservation Court.

On February 27, 2012, Mother refused to take a drug test. Mother failed to attend a team decision meeting at the Department on February 29, 2012. Family members attested that Mother did not take care of either B.B. or A.B. Mother had not completed the paperwork for Family Preservation Court. Mother's urine test results were positive for methamphetamine and marijuana. Mother had refused to meet with a social worker on March 7, 2012. Father had an extensive criminal history, primarily consisting of drug offenses.

3

On March 9, 2012, a section 300 petition was filed by the Department against Father and Mother on behalf of B.B. It alleged against Mother, under section 300, subdivision (b), that she abused controlled substances, had failed to comply with the safety plan, and lacked parenting skills to care for B.B. At a detention hearing held on March 12, 2012, the juvenile court found a prima facie case and ordered B.B. detained. The petition was amended to reflect that B.B. was detained and was placed in a foster home.

B.    *Jurisdictional/Dispositional Report and Hearing*

In a jurisdictional/dispositional report filed on March 29, 2012, the Department recommended that Mother be given a psychological evaluation and that she receive six-months of reunification services. Father was the presumed father.

Mother had been interviewed on March 22, 2012. She admitted to using both marijuana and methamphetamine. She denied that she intentionally missed any meetings with the Department and claimed she had not been notified of the meetings. Mother insisted she suffered from postpartum depression after the birth of A.B. but never saw a doctor for this diagnosis.

Mother claimed that as a teenager she had been diagnosed with bipolar disorder but had never been prescribed medication. Mother started drinking alcohol when she was 14 years old, she progressed to marijuana by the age of 15, and finally to methamphetamine use when she was 18 years old. She admitted using marijuana and methamphetamine as recently as that week. Using methamphetamine was an ongoing struggle for her. She had been clean and sober before but always relapsed.

4

Mother was instructed to enroll in a substance abuse program. She scheduled an intake appointment for March 20, 2012, and then rescheduled to March 21, 2012. She never showed up for the appointment. Mother attended visitation with B.B. on March 15, 2012 and she was appropriate during the visit. Mother wanted a psychological evaluation to confirm her diagnosis. She also wanted drug counseling.

The jurisdictional/dispositional hearing was conducted on April 4, 2012. A third amended petition was filed striking all the facts alleged against Mother supporting the section 300, subdivision (b) allegation except that Mother abused controlled substances. Mother waived her rights to a trial and submitted on the allegations in the amended petition. The juvenile court found the allegations in the third amended petition true. Mother was granted reunification services and a psychological evaluation was ordered.

C.      *Six-Month Status Review Report*

In a status review report filed on September 21, 2012, the Department recommended an additional six months of reunification services for Mother and that visitation be liberalized to weekend and overnight visits. Mother had obtained an apartment with the help of her mother and had the use of a vehicle. Mother had maintained her sobriety for several months. B.B. was developing normally.

Mother enrolled in a substance abuse program on April 3, 2012. She had failed a drug test the first week of her enrollment but had since been sober. Mother had been living in a facility that helps women and their children but had been removed from the facility for using her cellular telephone without authorization.

Mother had not enrolled in parenting education. Further, due to Mother's admitted substance abuse, the Department determined psychological testing would not be beneficial. Mother had missed some random drug tests. Mother and Father were no longer together.

Mother was loving and attentive during visitation with B.B. B.B. seemed to enjoy the visits and appeared bonded to Mother.

An addendum report was filed on October 26, 2012. In this report, the Department recommended that reunification services for Mother be terminated and that a section 366.26 hearing be set.

On October 1, 2012, during a visit with B.B., Mother appeared to be under the influence. An oral saliva test was conducted and it was positive for methamphetamine. Mother refused to submit to a urine test. Mother admitted that she used drugs on October 8, 2012. She claimed she was depressed.

On October 10, 2012, Mother missed a visit with B.B. (she claimed to have overslept). T.A. attended the visit with A.B. T.A. advised the social worker that Mother and Father were still together and that they never visited A.B. On October 19, 2012, Mother submitted to a hair follicle drug test. She tested positive for methamphetamine and amphetamines. Mother had been inconsistent in her attendance at the outpatient drug treatment program. She was on a waiting list for an inpatient program.

The status review hearing was conducted on October 29, 2012. Mother objected to the termination of services but did not present any evidence. She was requesting six more months of reunification services. The juvenile court noted, as to Mother's

6

substance abuse problem, "[T]he recent dirty test shows she's made no progress. I can't return the child to her. I cannot begin to imagine her conquering this years-long addiction in the next six months when she's essentially at square one." Mother's reunification services were terminated and a section 366.26 hearing was set.

The Department filed an ex parte application to remove B.B. from her foster home and place her with T.A. The application was granted and B.B. was placed with T.A. on February 7, 2013.

D. *Section 366.26 Report*

On February 13, 2013, the Department filed a report for the section 366.26 hearing. B.B. was a happy baby who was developing normally.

Mother had attended visitation and the visits went well. She brought presents to B.B. for both Christmas and her birthday. Mother claimed that she was not attending the outpatient drug program because her drug counselor had asked her for sexual favors. The Department requested a continuance in order to conduct an adoption study. The matter was continued.

Another report was filed on June 12, 2013. B.B. was thriving in the custody of T.A. B.B. was bonded to both T.A. and her sister A.B. A preliminary assessment for adoption by T.A. had been conducted and she was recommended to adopt B.B.

E. *Section 388 Petition and Section 366.26 Hearing*

At the time of the section 366.26 hearing on July 1, 2013, Mother made an oral section 388 motion. The juvenile court denied the section 388 petition, as will be

discussed in more detail, *post*. The juvenile court then considered whether to terminate Mother's parental rights. Mother did not object to the Department's documents. Mother's parental rights were terminated and B.B. was freed for adoption.

II

SECTION 388 PETITION

Mother contends that the juvenile court erred by denying her section 388 petition.

A.    *Additional Factual Background*

At the time of the section 366.26 hearing, Mother brought an oral section 388 petition. She submitted documentation that included a certificate of completion from Desert Hope, which was a residential treatment program for alcohol and drug abuse located in Las Vegas, Nevada. Mother participated in the program from May 25, 2013, and was discharged (after successfully completing the program) on June 22, 2013. Mother had an appointment for a psychological evaluation on July 24, 2013. Mother submitted testimony that B.B. was happy to see her during visitation. Mother fed her and bathed her when she had visits in T.A.'s home. Mother was looking for a job. She was enrolled in an outpatient drug treatment program in Palm Desert. She was no longer with Father.

Mother's counsel argued that she had shown changed circumstances. Further, as for B.B.'s best interests, she had only been with T.A. for six months. Mother maintained visitation with B.B.

The juvenile court concluded that there were not changed circumstances. Mother had a history of chronic substance abuse. She had only completed a 30-day program.

8

She was just in the beginning of her rehabilitation. The juvenile court felt that Mother was only "in the process of changing her life for the better." Further, it was not in the best interests of B.B. to grant the section 388 petition. B.B. had been out of Mother's custody since she was two months old. Mother was only someone who visited B.B. and played with her. T.A. was providing all of the care for B.B. The juvenile court ruled, "So I find no prima facie case, and I am going to deny the 388 on that basis."

B.    *Analysis*

"Section 388 allows a person having an interest in a dependent child of the court to petition the court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstance or new evidence." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) "'[S]pecific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required. [Citation.]" (*Ibid.*) It "shall set forth in concise language any change of circumstance or new evidence which are alleged to require the change of order or termination of jurisdiction." (§ 388, subd. (a).)

A section 388 petition must state a "prima facie case in order to trigger the right to proceed by way of a full hearing." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 592.) "'There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. [Citation.]'" (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079, 1081 [Fourth Dist., Div. Two] (*C.J.W.*).)

9

"We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W., supra*, 87 Cal.App.4th at p. 250; see also *In re Marcos G.* (2010) 182 Cal.App.4th 369, 382.) A section 388 petition is addressed to the sound discretion of the juvenile court, and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

Even a showing of great effort to make improvements will not necessarily be persuasive when a parent has an extensive history of drug use. (*C.J.W., supra,* 157 Cal.App.4th at p.1081 [affirming the denial of a section 388 petition when the parents' efforts at drug rehabilitation were only three months old at the time of the section 366.26 hearing]; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47-48 [affirming the denial of a section 388 petition when the mother with an extensive history of drug use had been drug free for only a few months and had not completed her treatment program]; *In re Mary G.* (2007) 151 Cal.App.4th 184, 205-206 [mother's very recent treatment for drug abuse and bipolar disorder was not even a prima facie case of changing circumstances].)

Mother was only in the beginning process of her recovery. Mother admitted that she started using marijuana daily when she was 15 years old. By the time she was 18 years old, she was using methamphetamine. Mother tested positive for methamphetamine at the beginning of the dependency proceeding. Despite B.B. being detained on March 12, 2012, Mother did not enroll in an outpatient treatment program until April 3, 2012. She did not regularly attend the program. She also missed several random drug tests. On October 1, 2012, Mother tested positive for methamphetamine, and a hair follicle test conducted on October 19, 2012, was positive for

10

methamphetamine.  Mother did not enter an inpatient treatment program until May 25, 2013.

Mother showed little progress in eliminating her substance abuse problem. Throughout the dependency process, she sporadically sought treatment.  At the time of the section 388 petition, she had only completed a three week treatment program.  Mother had shown that she could have moderate success but was subject to relapses.  Mother claims the juvenile court required Mother to show she had "changed" her circumstances. However, Mother was barely showing "changing circumstances," much less that she had changed her circumstances.  Mother failed to show a sufficient change in her circumstances to support granting the section 388 petition.

Mother refers to her mental illness as the source of her drug problem.  However, the only evidence that she suffered from bipolar disorder or postpartum depression came only from Mother's statements.  The Department felt that a proper mental health evaluation for bipolar disorder could not be made due to her drug use.  Mother never independently sought a mental evaluation and only represented at the time of the section 388 petition that she had an appointment for a psychological evaluation.  This was not enough to show that she suffered from some mental illness, and even if it did, she had done nothing to address her mental illness.  This cannot support that she had shown her circumstances were changing.

Moreover, it was not in B.B.'s best interests to grant the section 388 petition. Although B.B. had only been in T.A.'s custody for six months at the time the section 388 petition was denied, T.A. continuously visited with B.B. during the proceedings.

11

Moreover, B.B. and her sister A.B. were clearly bonded, and staying with T.A. assured that sibling relationship would continue. It should be noted that there is nothing in the record to support that Mother ever made any effort to regain custody of A.B. Remaining with A.B., and in T.A.'s custody with whom the Department reported she was bonded, was in B.B.'s best interests.

The juvenile court did not abuse its discretion in determining Mother had failed to establish that her circumstances had changed, or were even changing, for purposes of section 388. Accordingly, we reject Mother's argument that the juvenile court erred in denying her section 388 petition.

III

BENEFICIAL RELATIONSHIP EXCEPTION OF SECTION 366.26,

SUBDIVISION (c)(1)(B)(i)

Mother contends that the beneficial relationship exception applied to preclude termination of her parental rights. At the section 366.26 hearing, Mother's counsel asked that the trial court consider legal guardianship instead of adoption. Mother never stated that she wanted the juvenile court to apply any specific exception, including the beneficial relationship exception in section 366.26, subdivision (c)(1)(B)(i). The juvenile court could not find an "exception" that would compel it to order a legal guardianship in lieu of adoption. The juvenile court freed B.B. for adoption.

The beneficial relationship exception applies where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) "The exception applies only where the

12

court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) This means that "the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*Ibid.*) The parents have the burden of proving that the beneficial relationship exception applies. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.)

A parent who fails to raise an exception to the termination of parental rights below, waives the right to raise the issue on appeal. (*In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295; *In re Erik P.* (2002) 104 Cal.App.4th 395, 402-403.) "The application of any of the exceptions enumerated in section 366.26, subdivision (c)(1) depends entirely on a detailed analysis of the relevant facts by the juvenile court. [Citations.] If a parent fails to raise one of the exceptions at the hearing, not only does this deprive the juvenile court of the ability to evaluate the critical facts and make the necessary findings, but it also deprives this court of a sufficient factual record from which to conclude whether the trial court's determination is supported by substantial evidence. [Citation.] Allowing [a parent] to raise the exception for the first time on appeal would be inconsistent with this court's role of reviewing orders terminating parental rights for the sufficiency of the evidence." (*In re Erik P., supra,* 104 Cal.App.4th at p. 403.)

Mother never raised the beneficial relationship exception before the juvenile court. By failing to do so, the juvenile court never evaluated whether Mother had been consistent with visitation and whether B.B. was bonded to Mother, or assess the bond that

13

B.B. had with T.A.  Although the trial court addressed some of these issues in conjunction with the section 388 petition, it did not assess the issue as it applied to the exception in section 366.26, subdivision (c)(1)(B)(i).  As such, Mother has forfeited the argument on appeal.

Moreover, even if we were to consider the exception, and assume that she maintained consistent visitation, clearly it was not in B.B.'s best interests to continue the relationship with Mother.  As extensively outlined, *ante*, Mother had a continuing substance abuse problem, and B.B. was bonded to both T.A. and her sister A.B.  Mother did not establish that her "relationship [with B.B.] promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents."  (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.)  As such, the exception does not apply.

IV

DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:


HOLLENHORST
Acting P. J.


CODRINGTON
J.

14