[No. H024037. Sixth Dist. Dec. 16, 2002.]

In re ERIK P., a Person Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Plaintiff and Respondent, v.
SAMPHAN P., Defendant and Appellant.

## COUNSEL

S. Lynne Klein, under appointment by Court of Appeal, for Defendant and Appellant.

Ann Miller Ravel, County Counsel, and Teri L. Robinson, Deputy County Counsel, for Plaintiff and Respondent.

George W. Kennedy, District Attorney, and Robert J. Masterson, Deputy District Attorney, for Minor.

## OPINION

**RUSHING, J.**—Erik P. was detained in the hospital shortly after birth. His parents, who had previously lost custody of their other children, have never had custody of Erik. After the juvenile court terminated parental rights, Erik's father filed the instant appeal where he contends that, in light of recent legislation promoting the importance of sibling relationships (Welf. & Inst. Code, §§ 361.2, subd. (i), 362.1, subds. (b) & (c), 388, subd. (b), 366.26, subd. (c)(1)(E)),[1] the juvenile court inadequately considered Erik's sibling relationships before terminating parental rights. We find that there was sufficient evidence to support the juvenile court's finding of adoptability. We further find that although the father has standing to raise the newly enacted sibling exception found in section 366.26, subdivision (c)(1)(E), we conclude that the father was obligated to raise the exception at the section 366.26 hearing, and by failing to do so has waived his right to raise this issue on appeal. We also conclude that this exception is inapplicable because the father has lost his parental rights over the sibling, and because the nature of the sibling relationship here is not sufficiently substantial that its preservation would outweigh the benefit to Erik of being adopted. Therefore, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Erik's mother has had a total of nine children and has lost custody of them all. Erik's six oldest half siblings were previously placed with their father

---

[1]All further statutory references are to the Welfare and Institutions Code.

and the two youngest, Tiffany and Richard, were also dependents of the court. Richard, who was born with Down's syndrome, is Erik's full sibling. Appellant is both Richard and Erik's father, but has been excluded as Tiffany's father.

For reasons not relevant to the instant appeal, Erik's parents were determined to be unable to care for Erik or his siblings. Neither parent was offered reunification services, because both had failed to reunify with their other children. Both Richard and Tiffany had already been removed from their parent's care and were living in separate foster homes. Upon Erik's release from the hospital, he was immediately placed in the foster home where Richard was living. When Erik was two months old, however, Tiffany's adoptive family expressed a desire to adopt Erik as well, and the Santa Clara County Department of Family and Children's Services (Department) moved him into that home, where he has remained since that time.

At the contested permanency planning hearing, the court found Erik adoptable and terminated all parental rights. The father now appeals this order.

DISCUSSION

*Adoptability*

First, the father contends that substantial evidence did not support the finding that Erik was likely to be adopted. The Department urges us to find that the father has waived any objection to the adoptability finding by failing to object at the hearing.  ▪  When the merits of an adoptability finding are contested, "a parent is not required to object to the social service agency's failure to carry its burden of proof on the question of adoptability. [Citations.] 'Generally, points not urged in the trial court cannot be raised on appeal. [Citation.] The contention that a judgment is not supported by substantial evidence, however, is an obvious exception to the rule.' [Citations.]" (*In re Brian P.* (2002) 99 Cal.App.4th 616, 623 [99 Cal.App.4th 1333f, 121 Cal.Rptr.2d 326].) Therefore, "while a parent may waive the objection that an adoption assessment does not comply with the requirements provided in section 366.21, subdivision (i), a claim that there was insufficient evidence of the child's adoptability at a contested hearing is not waived by failure to argue the issue in the juvenile court." (*Ibid.*) Waiver, under most circumstances, would be disfavored.

Under the circumstances here, although the father did not object to the adoptability finding at the section 366.26 hearing, he may still argue that the

juvenile court's adoptability finding was not supported by substantial evidence. Because it was the Department's burden to prove adoptability by clear and convincing evidence, to hold otherwise would dilute the Department's obligation to provide the juvenile court with the necessary facts regarding adoptability. With this in mind, we move on to the merits of the father's argument.

■ The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time. (§§ 366.26, subd. (c)(1), 366.22 subd. (b)(6); *In re Jennilee T.* (1992) 3 Cal.App.4th 212, 223 [4 Cal.Rptr.2d 101].) In making this determination, the juvenile court must focus on the child, and whether the child's age, physical condition, and emotional state may make it difficult to find an adoptive family. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649 [28 Cal.Rptr.2d 82]; *In re Jeremy S.* (2001) 89 Cal.App.4th 514, 523 [107 Cal.Rptr.2d 280].) In reviewing the juvenile court's order, we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that Erik was likely to be adopted within a reasonable time. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1153-1154 [94 Cal.Rptr.2d 693]; § 366.26, subd. (c)(1).)

■ Erik was an attractive baby boy who resembled his siblings and who had no major physical or mental problems. Although born prematurely, his only problem was hypertonia, or increased tightness of muscle tone, which is treatable with physical therapy. In fact, his adoptive mother had been doing exercises with him and Erik was already showing improvement. Erik was also sleeping and eating well and looked like a healthy child.

Additionally, when Erik was only a few months old, the Department had successfully located an appropriate adoptive home for him with the family who had already adopted his half sister. His social worker found that Erik was attached to his adoptive family and was responding well to the attention and affection he was receiving in the home. While, generally, the present existence or nonexistence of prospective adoptive parents is, in itself, not determinative, it is a factor in determining whether the child is adoptable. A prospective adoptive parent's is interest in adopting is evidence that the child's age, physical condition, mental state, and other matters relating to the child are not likely to discourage others from adopting the child. (§ 366.26, subd. (c)(1); *In re Sarah M., supra,* 22 Cal.App.4th at p. 1649.) Erik's prospective adoptive family knew about Erik's family history of mental illness, had already adopted Erik's sibling and were committed to keeping the siblings in the same home. All of these factors support the juvenile court's finding that Erik was adoptable.

The father contends that the juvenile court should also have considered the sibling relationship in making its adoptability determination. Yet the father fails to explain how, in light of recent legislation emphasizing the importance of sibling relationships, the existence of Erik's sibling relationship with Richard makes Erik less likely to be adopted. Nor does he provide any authority for this proposition. In fact, Erik's sibling relationship with his half sister, Tiffany, actually made Erik more likely to be adopted, since Tiffany's family also wished to adopt Erik.

*Section 366.26, subdivision (c)(1)(E) Exception*[2]

Although, Erik's relationships with his siblings were not factors impacting his adoptability, the newly enacted sibling exception found in section 366.26, subdivision (c)(1)(E),[3] may, under the appropriate circumstances prevent the termination of parental rights.

At a section 366.26 hearing, once the Department has shown it is likely the child will be adopted, the burden shifts to the parents to prove that termination of parental rights would be detrimental to the child based on one of the exceptions enumerated in subdivision (c)(1). (*In re Celine R.* (2002) 102 Cal.App.4th 717, 723-724 [125 Cal.Rptr.2d 630]; see also *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1344 [63 Cal.Rptr.2d 562]; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 574 [32 Cal.Rptr.2d 535]; *In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1372-1373 [8 Cal.Rptr.2d 342].) At the hearing, the father testified briefly regarding his relationship with Erik. He indicated that he had never lived with Erik and had visited him a total of five or six times. When asked why his parental rights should not be terminated, the father answered, "I want my kid back . . . [¶] . . . [¶] . . . [T]his is my own

---

[2]While the father does not specifically invoke the section 366.26, subdivision (c)(1)(E) exception, he raises the sibling relationship issue, citing sections 361.2 and 362.1, and contends that the juvenile court erred in not considering this relationship prior to terminating parental rights. The issues before the court at a section 366.26 hearing are limited to the questions of whether the child is adoptable and whether there is a statutory exception to adoption. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 250, 254 [19 Cal.Rptr.2d 698; 851 P.2d 1307].) Because we have already determined that the sibling relationship has no bearing on the question of adoptability, we must next determine to what extent the sibling relationship provided a basis to invoke the statutory exception to adoption. There is no other vehicle by which the father can raise the sibling relationship to argue that the juvenile court erred in terminating parental rights.

[3]Section 366.26, subdivision (c)(1)(E) provides that a juvenile court cannot terminate parental rights where "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."

kid. And why can't I have him and raise him? I know how to raise my own kid. Even animal [*sic*] know how to raise their own kid." He neither raised nor provided a factual basis for any of the exceptions enumerated in section 366.26, subdivision (c)(1). In terminating all parental rights, the juvenile court specifically found that "[t]ermination of parental rights would not be detrimental to the child as defined in section 366.26 subdivision [(c)(1)]."

a. *Standing*

For the first time on appeal, the father contends that the exception in section 366.26, subdivision (c)(1)(E) applies and should have prevented termination of his parental rights. The Department urges us to find that a parent lacks standing to raise the section 366.26, subdivision (c)(1)(E) exception. Because of the recent enactment of this exception, this question has only been addressed by one published opinion thus far. In holding that a parent has standing to raise the exception, the court in *In re L.Y.L.* (2002) 101 Cal.App.4th 942 [124 Cal.Rptr.2d 688] observed that, "[g]enerally, a parent who is an aggrieved party may appeal a judgment in a juvenile dependency matter. [Citation.] To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by the court's decision. [Citation.] The injury must be immediate and substantial, and not nominal or remote. [Citation.] We liberally construe the issue of standing and resolve doubts in favor of the right to appeal. [Citation.]" (*Id.* at p. 948.) The court concluded that whether or not a juvenile court found the exception applicable to preclude termination of parental rights, "an immediate and substantial consequence results to the parent's legally cognizable interest in the relationship with his or her child." (*Ibid.*)

While cases prior to the enactment of the section 366.36, subdivision (c)(1)(E) exception routinely held that a parent does not have standing to challenge the termination of parental rights based on the minor's relationship with siblings (*In re Devin M.* (1997) 58 Cal.App.4th 1538, 1541 [68 Cal.Rptr.2d 666]; see also *In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806-1808 [54 Cal.Rptr.2d 560]; *In re Nachelle S.* (1996) 41 Cal.App.4th 1557 [49 Cal.Rptr.2d 200]; *In re Gary P.* (1995) 40 Cal.App.4th 875 [46 Cal.Rptr.2d 929]), we agree that a "parent has standing to assert the subdivision (c)(1)(E) exception to termination of parental rights because the parent under general standing requirements is a party directly aggrieved by a decision on the issue." (*In re L.Y.L., supra,* 101 Cal.App.4th at p. 948; see also *In re Daniel H.* (2002) 99 Cal.App.4th 804, 811-812 [121 Cal.Rptr.2d 475] [observing "that this new sibling relationship exception probably renders the standing issue moot. Because sibling relationships are now a statutory exception to adoption, those relationships directly impact the parent's interest in reunification, an interest that can be kept alive merely by avoiding adoption"].)

### b. *The Father Waived the Exception by Not Raising It at the Hearing*

■ Even though it was the father's burden to raise any relevant exception at the hearing, he failed to do so. He now urges us to allow him to raise these issues for the first time on appeal because they are "pure question[s] of law." Nothing could be further from the truth. The application of any of the exceptions enumerated in section 366.26, subdivision (c)(1) depends entirely on a detailed analysis of the relevant facts by the juvenile court. (See, e.g., *In re Lorenzo C., supra,* 54 Cal.App.4th 1330; *In re Autumn H., supra,* 27 Cal.App.4th 567; *In re Cristella C., supra,* 6 Cal.App.4th 1363.) If a parent fails to raise one of the exceptions at the hearing, not only does this deprive the juvenile court of the ability to evaluate the critical facts and make the necessary findings, but it also deprives this court of a sufficient factual record from which to conclude whether the trial court's determination is supported by substantial evidence. (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.) Allowing the father to raise the exception for the first time on appeal would be inconsistent with this court's role of reviewing orders terminating parental rights for the sufficiency of the evidence. Therefore, the father has waived his right to raise the exception. (See *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501 [102 Cal.Rptr.2d 196].)

### c. *The Exception Is Inapplicable to the Instant Case*

■ Even if the father had not waived the exception, it is entirely inapplicable under the facts of this case. Section 366.26, subdivision (c)(1)(E) provides an exception to termination of parental rights where termination would cause a substantial interference with the sibling relationship. If termination will substantially interfere with the sibling relationship, section 366.26, subdivision (c)(1)(E) lists numerous factors the juvenile court is to consider in determining whether the circumstance of any given case warrant the application of the exception. First a juvenile court must consider the nature and extent of the relationship, including, but not limited to, factors such as 1) whether the child was raised with a sibling in the same home, 2) whether the child shared significant common experiences, or 3) whether the child has existing close and strong bonds with a sibling. If the relationship exhibits some or all of these factors, the juvenile court must then go on to balance any benefit, emotional or otherwise, the child would obtain from ongoing contact with the sibling against the benefit of legal permanence the child would obtain through adoption. (§ 366.26, subd. (c)(1)(E); see *In re L.Y.L., supra,* 101 Cal.App.4th at p. 949.)

### 1. *Termination cannot "substantially interfere" with the sibling relationship*

As an initial matter, terminating parental rights, here, can in no way interfere with the sibling relationship; just as retaining parental rights would

in no way preserve the sibling bond. The father's parental rights as to Erik's brother, Richard, were previously terminated and Richard has been adopted. Where the parents' continuing relationship with the dependent child, or absence thereof, can in no way affect the nature of the sibling relationship because the parent no longer has a relationship with the sibling, the exception does not apply. That is the case here.

### 2. *The sibling relationship is not sufficiently substantial*

Further, the relationship between Erik and Richard is not the type of sibling relationship the section 366.26, subdivision (c)(1)(E) exception was enacted to protect. In enacting this exception, the legislature was concerned with preserving long-standing relationships between siblings which serve as anchors for dependent children whose lives are in turmoil. The legislative history is instructive.[4] One legislative analysis commented that, " 'when children have been separated from their parents due to abuse and neglect, sibling relationships become even more important to them. Academics and children's advocates agree that maintaining sibling relationships can be critically important to the emotional well-being of these children whose lives and trust have been shattered. . . .' " (Assem. Floor Analysis, 3d reading of Assem. Bill No. 705 (2000-2001 Reg. Sess.) as amended May 7, 2001, p. 3.) " 'Maintaining sibling relationships is particularly important to children who have already lost their homes, their parents, changed schools and lost contact with their friends. Siblings are the only family, the last link to normalcy, that these children have left. . . .' " " '[M]aintaining relationships, under the right circumstances, is imperative for the emotional well-being of the [dependent] child now and in the future. For children who will never be returned to their parents, siblings may be the only true family they will ever have.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 705 (2000-2001 Reg. Sess.) as amended June 11, 2001, p. 5.)

These legislative goals would not be advanced here if the sibling relationship were preserved. Erik was placed in foster care as a newborn, immediately after his discharge from the hospital. He has no family history with his parents or other siblings. He was not torn away from a home, a school or friends. Additionally, the relationship between Erik and his brother could not serve as an anchor for Erik to his past. As a newborn, Erik spent only two months in the same home as his brother, before moving to his adoptive home with his half sister, where he has spent the vast majority of his life. Not only

---

[4]On July 9, 2002, this court granted appellant's request for judicial notice of portions of the legislative history of Assembly Bill No. 705, which added the section 366.26, subdivision (c)(1)(E) exception.

have Erik and Richard not been raised in the same home, Erik's father failed to present evidence of "a close and strong bond" between the boys. Under these circumstances, the benefit from the preservation of the relationship between Erik and Richard would not outweigh the benefit to Erik of being adopted by the family with which he has spent most of his life.

*The Juvenile Court Adequately Addressed the Sibling Relationship*

To the extent the father objects, in a general sense, to the permanent plan and its impact on Erik and Richard's relationship, his standing to do so is questionable. Cases decided prior to the enactment of the section 366.26, subdivision (c)(1)(E) exception held that a parent, whose rights were terminated, had no standing to raise the issue of subsequent sibling visitation. (*In re Clifton B.* (2000) 81 Cal.App.4th 415, 425 [96 Cal.Rptr.2d 778]; *In re Jasmine J., supra,* 46 Cal.App.4th at pp. 1806-1807.) Although at least one court has speculated that this line of cases may be moot (*In re Daniel H., supra,* 99 Cal.App.4th at pp. 811-812), we believe that, as to posttermination visitation between siblings, where the subdivision (c)(1)(E) exception is not applicable, these prior holdings still appear valid.

In any case, we need not decide this issue here because the juvenile court had substantial evidence before it that visitation between Erik and Richard had been arranged and would be continuing. Erik and Richard's families had exchanged information and intended to continue to develop the relationship between the brothers.

By placing Erik in a home with his sibling, the juvenile court adequately complied with its mandate to consider and maintain sibling bonds. Finally, there is no basis from which to conclude that Erik's relationship with Richard was somehow more important than his relationship with Tiffany, or that the protection of that relationship better advanced the legislative intent to protect sibling bonds.

## DISPOSITION

The order appealed from is affirmed.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied January 15, 2003, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 5, 2003.