Filed 5/8/14  In re B.V. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re B.V. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. M.V., Defendant and Appellant. | G049225 (Super. Ct. Nos. DP021609 & DP021610) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

\*          \*          \*

INTRODUCTION

M.V. (Mother) appeals following an order terminating her parental rights regarding now six-year-old B.V. and five-year-old S.V. (collectively referred to as the boys). Mother contends the juvenile court erred by finding the boys adoptable and also by summarily denying Mother's petition under section 388 of the Welfare and Institutions Code, through which she sought the return of the boys to her care or, alternatively, further reunification services. (All further statutory references are to the Welfare and Institutions Code.)

We affirm. Substantial evidence supported the juvenile court's finding the boys were adoptable. As discussed in detail *post*, Mother failed to make a prima facie showing that changed circumstances or new evidence supported an order returning the boys to her care or providing her with further reunification services; she also failed to make an offer of proof showing that either request would be in the boys' best interests.

BACKGROUND

I.

THE AMENDED JUVENILE DEPENDENCY PETITION

In September 2011, the Orange County Social Services Agency (SSA) filed a juvenile dependency petition which, as amended in October 2011 (the amended petition), alleged, inter alia, that B.V. and S.V. came within the jurisdiction of the juvenile court under section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (g) (no provision for support).[1]

---

[1] The original juvenile dependency petition, filed in September 2011, was also filed on behalf of seven of Mother's other children, who are not parties to this appeal. We therefore refer to the boys' siblings only to the extent such references provide relevant background for our consideration of the issues on appeal.

The amended petition alleged that on August 31, 2011, Mother used a bathrobe tie to tether then three-year-old S.V to a couch in the family's living room, and then left the home. S.V. remained tied to the couch until police officers from the Santa Ana Police Department found and released him.

The amended petition further alleged that "[o]n multiple separate occasions, of at least five separate incidents to a daily basis, in the two weeks prior to August 31, 2011, the children's mother tied and tethered the child S[.V.] to a couch in the family's living room using a bathrobe tie for an unspecified length[] of time during both the daytime and nighttime while the children's mother was both present in the home and when the children's mother had left the home, resulting in the child S[.V.] sustaining a bruise and ligature mark to his ankle." The amended petition also alleged that on several separate occasions in August 2011, Mother left her then 12-year-old child and 11-year-old child in charge of then 4-year-old B.V., S.V., and two-month-old twins, for unspecified lengths of time when she was away from home.

On August 31, 2011, the boys and their seven siblings, who were in Mother's care at that time, were all taken into protective custody. On September 1, 2011, the boys were placed in the home of their maternal grandmother.[2] The amended petition noted that Mother, who "may suffer from an undiagnosed mental illness," was incarcerated on August 31.[3]

---

[2] The boys' maternal uncle, his wife, and their children live in the maternal grandmother's home.

[3] The amended petition stated that the whereabouts of the boys' father (Father) were unknown and that he had failed to provide for their care, protect them from harm, and maintain a relationship with them. Our record shows Father was eventually located in custody and was then deported to Mexico where he participated in visits with the boys, pursuant to arrangements made by SSA through the Mexican consulate. Father is not a party to this appeal.

## II.

THE JURISDICTION AND DISPOSITION HEARINGS; THE JUVENILE COURT TERMINATES
REUNIFICATION SERVICES AND SETS A PERMANENCY HEARING.

At the jurisdiction hearing, Mother pleaded no contest to the allegations of
the amended petition. The juvenile court found a factual basis for Mother's plea and the
allegations of the amended petition as to the boys true by a preponderance of the
evidence.

At the disposition hearing in January 2012, the juvenile court ordered the
boys declared dependent children of the juvenile court, and approved a case plan for
Mother. The court terminated reunification services in June 2013, and set the matter for a
permanency hearing.

## III.

THE PERMANENCY HEARING REPORT AND THE ADDENDUM REPORT

The following summarizes those portions of the permanency hearing report
dated October 16, 2013 and the addendum report dated October 29, 2013, both of which
the juvenile court received into evidence at the permanency hearing, as are relevant to
Mother's issues on appeal.

In the permanency hearing report, SSA recommended the court find the
boys adoptable and terminate Mother's and Father's parental rights. The report stated the
boys had a "number of traits adoptive families seek including young age, pleasant
features, and good health." They both participated in developmentally appropriate
extracurricular and social activities. Both are attractive and energetic.

The permanency hearing report stated six-year-old B.V. had no known
medical concerns and "appear[ed] to be developmentally age-appropriate and ha[d] no
physical limitation," learning disability, or special education needs. B.V. liked school

4

and learning new things. Although B.V. had occasional tantrums when he did not get his way, and sometimes fought with S.V., B.V.'s behavior had been "generally" appropriate. The boys' therapist reported that B.V. had a lot of anger that they worked on in therapy. The therapist further reported that Mother's inappropriate behavior during visits retraumatized the boys.[4]

As to five-year-old S.V., the permanency hearing report stated he did not have any medical problems, but was easily distracted, had a short attention span, was impulsive and easily upset, and was aggressive with his peers.[5] He had some difficulty speaking and was attending a specialized school to address speech and language issues. S.V.'s behavior problems negatively impacted his ability to socialize, but he had shown improvement in some areas due to his involvement in his preschool program. About a year into their placement, the boys began "act[ing] like other children of their ages."

In the addendum report, SSA reported the maternal grandmother and maternal uncle had been attending parenting classes and had learned skills for handling problematic behaviors. The report reiterated that while the boys had defiant behavior issues, anger management issues, and poor impulse control problems, their behavior had "improved markedly since they were first placed" in the home of the caregivers. The boys' therapist reported that the caregivers "are doing a great job."

---

[4] The permanency hearing report stated that during visits, Mother, inter alia, had given B.V. a cell phone for him to use to spy on the caregivers and record their conversations; encouraged B.V. to provoke the maternal grandmother to hit him so that she would go to jail; lied to the boys about Father's identity; called the maternal uncle "stupid, idiotic and an asshole"; taught the boys "bad words"; and told the boys the SSA visit supervisors and transport drivers were witches who were going to take the boys back to their home on a broom (which frightened the boys). Mother's unmonitored visits had been changed to monitored visits "to try to reduce the trauma" to the boys.

[5] The jurisdiction/disposition report contains a statement that S.V. had been diagnosed with autism. No evidence was presented at the permanency hearing that addressed, much less confirmed, whether he had been so diagnosed and the reliability of any such diagnosis.

The addendum report stated the caregivers love the boys, have a strong attachment to and bond with them, and wish to adopt them. The caregivers are aware of the boys' behavioral challenges and have been actively working to help the boys overcome those challenges. The caregivers' home assessment had not yet been completed as of the date of the addendum report. B.V. had expressed his desire to live with the caregivers, and, on one occasion, had asked them, "if I go and live with my mom, will you be there to rescue me?" S.V. stated he would like to live in two homes—one with the caregivers and the other with Mother.

IV.

THE JUVENILE COURT SUMMARILY DENIES MOTHER'S SECTION 388 PETITION AND TERMINATES PARENTAL RIGHTS AS TO THE BOYS; MOTHER APPEALS.

On October 16, 2013, Mother filed a petition under section 388, seeking an order returning the boys to her care or, alternatively, providing her with further reunification services. In the petition, Mother asserted the following new evidence or change of circumstances: "Since my reunification services have been terminated, I have remained consistent with my visits with B[.V.] and S[.V.]. I also have completed three certificates: Individual Therapy (Exhibit A); Child Directed Play (Exhibit B); and Parenting Classes (Exhibit C)." She further asserted the boys' return to her care or the receipt of further reunification services would be in the boys' best interests because she "love[d] them tremendously," believed she had addressed the issues that had caused the dependency proceedings, and had been consistent with visitation. She also asserted: "We have a parent-child bond relationship. I believe that it would be detrimental to the kids if they can no longer see me."

The juvenile court denied Mother's section 388 petition without a hearing because the petition did not state new evidence or a change of circumstances and did not seek relief that would be in the best interests of the boys.

6

At permanency hearing, the juvenile court admitted the permanency hearing report and the addendum report into evidence. No other evidence was offered. The court asked Mother's attorney if she would like to be heard. Mother's attorney stated: "[Mother] wants the court to know that she loves her children very much, is sad that she did not reunify with them and that her [section] 388 [petition] was denied at the last court date. [¶] Mom is not in agreement with the recommendations, Your Honor. I have explained the legal issues to mother and her right to have a hearing for today and she understands those issues and she does not feel that she had enough evidence to overcome the burden and legal issues because of the fact her 388 was denied at the last court date. [¶] Mom believes that the prospective adoptive parents are not the proper caretakers for the children. She was physically and emotionally abused by her mother, who is the present protective adoptive parent, and she believes that the children are going to be subjected, if they have not been, to the same treatment that she was in her childhood, and with that we submit, Your Honor."

The juvenile court found it likely the boys would be adopted and placed them for adoption. The court terminated Mother's and Father's parental rights as to the boys.

Mother appealed.

## DISCUSSION

### I.

#### SUBSTANTIAL EVIDENCE SHOWED THE BOYS WERE ADOPTABLE.

"The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time. [Citations.] In making this determination, the juvenile court must focus on the child, and whether the child's age, physical condition, and emotional state may make it difficult to find an adoptive family. [Citations.] In reviewing the juvenile court's order,

7

we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [the child] was likely to be adopted within a reasonable time. [Citations.]" (*In re Erik P.* (2002) 104 Cal.App.4th 395, 400; see *In re Zeth S.* (2003) 31 Cal.4th 396, 406.) We give the juvenile court's finding of adoptability the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)

The juvenile court's finding that the boys were adoptable was supported by substantial evidence contained in the permanency hearing report and the addendum report filed by SSA. The reports showed the boys are young (B.V. is six years old and S.V. is five years old), attractive, and involved in developmentally appropriate extracurricular and social activities.

Although the boys have behavioral problems, they are participating in therapy and have made progress in overcoming those problems. S.V. has speech and language problems that are being addressed in the specialized school he is attending. There is no evidence before us that the boys' problems are severe enough to render them not adoptable.

The prospective adoptive parents, with whom the boys have lived since September 1, 2011, have committed to adopting the boys, being fully aware of their needs. Even if for some reason the prospective adoptive parents were not able to adopt the boys, whether due to the maternal uncle's 20-year-old past criminal offenses or otherwise, sufficient evidence showed the boys possess positive qualities sought by adoptive families, which would enable them to be placed in another adoptive home within a reasonable time.

The juvenile court did not err by concluding the boys were adoptable, by clear and convincing evidence.

## II.

### THE JUVENILE COURT DID NOT ABUSE ITS DISCRETION BY SUMMARILY DENYING MOTHER'S SECTION 388 PETITION SEEKING THE RETURN OF THE BOYS TO HER CARE OR, ALTERNATIVELY, FURTHER REUNIFICATION SERVICES.

Mother contends the juvenile court erred by summarily denying the section 388 petition in which she sought the return of the boys to her care or, alternatively, further reunification services. For the reasons discussed *post*, we conclude the juvenile court did not abuse its discretion.

We review the juvenile court's decision to deny Mother's section 388 petition without a hearing for abuse of discretion. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.) We may not reweigh the evidence or substitute our judgment for that of the juvenile court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319.) We affirm the order unless it ""'exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"" (*In re Brittany K.*, *supra*, at p. 1505.) The juvenile court's decision will not be disturbed unless the court ""'has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'" [Citations.]" (*In re Stephanie M.*, *supra,* at p. 318.)

To succeed on a section 388 petition, a parent must show changed circumstances establishing that the proposed modification would be in the best interests of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526.) "The parent seeking modification [through a section 388 petition] must 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' [Citations.] There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. [Citation.] If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be

9

promoted by the proposed change of order, the dependency court need not order a hearing." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

The juvenile court denied Mother's section 388 petition on the grounds, "[t]he request does not state new evidence or a change of circumstances" and "[t]he proposed change of order . . . does not promote the best interest of the child." The juvenile court did not abuse its discretion in concluding Mother had failed to make a showing of any change of circumstances or new evidence within the meaning of section 388.

Mother asserted the following change of circumstances or new evidence in support of her section 388 petition: "Since my reunification services have been terminated, I have remained consistent with my visits with B[.V.] and S[.V.]. I also have completed three certificates: Individual Therapy (Exhibit A); Child Directed Play (Exhibit B); and Parenting Classes (Exhibit C)." Exhibit A is a treatment verification form for Mother's individual treatment in progress. It states Mother "has completed six sessions with F.A.C.E.S. [(Family Assessment, Counseling & Education Services Inc.)] at El Modena Family Resource Center. [Mother] actively participated in session[s] and shared all the skills she learned in previous classes and therapeutic sessions. She was able to show progress by being aware of her actions and reflecting on how those actions impact her life. Demonstrate[d] a lot of interest in doing what is needed to be reunited with her children." Exhibit B is a certificate of attendance from New Alternatives, Inc., stating Mother completed a two-hour training session on "child directed play." Exhibit C is a certificate showing that Mother completed a program at a church. Mother's section 388 petition, including its attachments, reflected, at most, changing but not changed circumstances. The juvenile court did not err by concluding Mother failed to make a prima facie showing of changed circumstances or new evidence within the meaning of section 388.

Even if Mother had made a prima facie showing of changed circumstances, she failed to make a prima facie showing that the relief she requested in her section 388 petition would be in the boys' best interests. In determining whether a section 388 petition addresses the best interests of the child, the following factors should be considered: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.*, *supra*, 56 Cal.App.4th at p. 532.) The strength of the relative bonds between the dependent children to both parent and caretakers becomes an even more important factor when a section 388 petition is filed after reunification services have been terminated. In *In re Stephanie M.*, *supra*, 7 Cal.4th at page 317, the California Supreme Court stated, "[a]fter the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child."

The only evidence Mother offered in support of her section 388 petition was her assertion: "I am B[.V.]'s and S[.V.]'s mother and love them tremendously. I believe that I have addressed the issues that have brought my case before the Court. I have been consistent with my visits. During the visits, I provide food and toys. We eat, play together, and pray together. We have a parent-child bond relationship. I believe that it would be detrimental to the kids if they can no longer see me."

In her section 388 petition, Mother failed to meaningfully address the seriousness of the problems which led to the dependency proceeding. She also failed to

11

address the strength of the relative bonds between the boys and Mother, on the one hand, and the boys and their caregivers in their current placement.

The juvenile court did not abuse its discretion by summarily denying the section 388 petition.

## DISPOSITION

The order is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.