Filed 12/18/14  In re J.M. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B255555<br>(Super. Ct. No. J069125)<br>(Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM M. et al.,<br><br>    Defendants and Appellants. | |

William M. (Father) and M.S. (Mother) appeal the juvenile court's order terminating their parental rights to J.M., a child coming under the juvenile court law. (Welf. & Inst. Code, § 366.26.)  We conclude, among other things, that:  1) the trial court's finding that J.M. was likely to be adopted within a reasonable time is supported by substantial evidence, and 2) the trial court did not err in terminating parental rights before the completion of a home study.  We affirm.

FACTS

In November 2012, the Ventura County Human Services Agency (HSA) filed a juvenile dependency petition.  (Welf. & Inst. Code, § 300, subd. (b) & (g).)  HSA alleged Mother had been arrested for child endangerment after she admitted to law

enforcement that "she attempted to suffocate" J.M., her five month old son. HSA said Mother had a history of mental and emotional problems and Father "failed to protect the child from the mother's actions."

On January 29, 2013, the trial court sustained the petition. It found: 1) Father "does not have a stable living situation and is unable to provide appropriate care for the child"; 2) Mother has a history of "mental and/or emotional problems and has been diagnosed as having Paranoia, Depression and Anxiety"; and 3) Mother is "unable to provide adequate care for the child as evidenced by [her] disorganized thought process and dissociative state." The court declared J.M. to be a dependent of the juvenile court. It removed J.M. from the custody of his parents, placed him in a foster home, and ordered the parents to participate in case plan services.

HSA provided Mother and Father with a variety of service referrals. The parents did not participate in the reunification services HSA provided. They did not cooperate with the HSA social worker. At a meeting with the social worker, the parents "refused to sign the case plan." They also "refused to sign a release of information."

On August 8, 2013, the trial court found Mother and Father "have refused to participate in case plan services." It said, "The extent of progress made by [Mother and Father] toward alleviating or mitigating the causes necessitating placement has been nil." It terminated family reunification services for both parents.

In an addendum report filed March 20, 2014, HSA recommended that parental rights for both parents be terminated and that J.M. "be freed for adoption with the identified confidential foster family whom the child is currently placed with." It said J.M. had been with that family since October 2013, and he had some behavioral problems when he was initially placed there; "but with Early Intervention services, the behaviors have diminished." The adoption social worker noted that these prospective adoptive parents want to adopt J.M. She said J.M. is adoptable because he is "healthy, attractive and friendly."

Mother and Father did not appear for the contested section 366.26 hearing. The trial court found there was "no compelling evidence or substantial evidence of a

2

beneficial relationship between the parents and the minor."  It terminated the parental rights for each parent and found that J.M. was adoptable.

DISCUSSION

*The Finding That J.M. Was Adoptable*

Mother contends there is insufficient evidence to support the finding that J.M. was likely to be adopted within a reasonable time.  We disagree.

"'The sole issue at the selection and implementation hearing is whether there is clear and convincing evidence that the child is adoptable.'"  (*In re Josue G.* (2003) 106 Cal.App.4th 725, 733.)  On appeal, the issue is whether there is substantial evidence to support the finding that the child is likely to be adopted within a reasonable time.  (*In re Erik P.* (2002) 104 Cal.App.4th 395, 400.)

"'In resolving this issue, the court focuses on *the child*--whether his age, physical condition and emotional state make it difficult to find a person willing to adopt him.'"  (*In re Josue G.*, *supra*, 106 Cal.App.4th at p. 733.)  To make the required finding, "'[I]t is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent "waiting in the wings."'"  (*Ibid.*)  "'[A] prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*.'"  (*Ibid.*)

Mother contends J.M. was not adoptable.  She cites to evidence that he had several prior placements, he was "19 months old," and he had "behavioral problems, such as kicking, biting, temper tantrums, and pulling out his hair."  But the issue is not whether some evidence supports Mother's position, it is whether substantial evidence supports the trial court's findings.

HSA noted that when J.M. was first placed with his current prospective adoptive parents, he "displayed some difficult behaviors such as biting and throwing many temper tantrums."  But J.M. received "Early Intervention services," and the negative "behaviors have diminished."  The therapy and care he received from the prospective adoptive parents helped him overcome behavioral problems.  HSA said,

3

"[T]he child has made great improvements.  He no longer bites and his tantrums are fewer and farther between."  HSA said, "He is learning to trust the caregivers and looks to them to meet his needs."

J.M. had prior placements with foster families that were not successful. But HSA contends this was not "related in any way to any special needs [J.M.] had."  We agree.  Two prior placements ended because HSA placed J.M. with adults who did not have the ability to be foster parents.  J.M. had a prior foster home placement that lasted six months.  That placement ended when the foster parent told HSA that "they were too old to care for him."  J.M. was placed in another foster home.  That placement ended when the foster parents decided that "they weren't suited to become parents."

HSA said the current prospective adoptive parents intend to adopt J.M. and he "is doing well in [that] home."  J.M. "feels comfortable" there, and "his needs are being met."  These prospective adoptive parents "are committed to continuing to work with [J.M.] and to help him overcome the adversities he has experienced at such a young age."  The HSA social worker saw "bonding between the foster parents and the child during home visits."  The adoption social worker said J.M. "should be considered as adoptable."  He is "healthy, attractive and friendly."  Substantial evidence supports the trial court's findings on adoptability.

*The Absence of a Completed Home Study*

Father notes there was no completed home study.  He contends the trial court consequently "erred in terminating parental rights before the home study was completed."  (Boldface omitted.)  He claims a reversal is required.  We disagree.

"[T]here is no requirement that an adoptive home study be completed before a court can terminate parental rights."  (*In re Marina S.* (2005) 132 Cal.App.4th 158, 166.)  "The question before the juvenile court was whether the child was likely to be adopted within a reasonable period, not whether any particular adoptive parents were suitable."  (*Ibid.*)  Substantial evidence supports the required finding.

Moreover, HSA noted that the prospective adoptive parents are "experienced foster parents" who have adopted other children.  They have a prior

4

"approved home study and are in the process of updating it."  HSA said, "The prospective adoptive parents appear to be a good match for [J.M.]. . . .  The family home is 'child friendly' there are plenty of toys in the home and a large backyard with a playground and athletic equipment."  HSA said, "Each prospective adoptive parent is building a loving relationship with [J.M.]."  Mother and Father have not shown that the trial court erred.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

5

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant William M.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant M.S.

Leroy Smith, County Counsel, Alison L. Harris, Assistant County Counsel, for Plaintiff and Respondent.