Filed 4/1/15  In re K.L. CA 2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re K.L., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B259626 (Super. Ct. No. JV42903) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.L.<br><br>    Defendant and Appellant. | |

         S.L. (Mother) appeals juvenile court orders terminating her parental rights (Welf. & Inst. Code, § 366.26)[1] and denying her petition to modify (§ 388) an order bypassing family reunification services with her child K.L., a person coming under the juvenile court law.  (§§ 300, subd. (b); 361.5, subd. (b)(13).)  We conclude, among other things, that 1) the trial court did not abuse its discretion by denying Mother's section 388 modification petition, and 2) it did not err by terminating Mother's parental rights and finding the child was adoptable.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

FACTS

On January 7, 2014, the San Luis Obispo County Department of Social Services (DSS) filed a juvenile dependency petition (§ 300, subd. (b)), alleging Mother failed to protect K.L., a two-year-old girl, from abuse and neglect. On January 3, Mother was arrested for using and being under the influence of a controlled substance, methamphetamine, and "[w]illful [c]ruelty" to a child. The little girl was dirty and hungry. She was in a car outside a fast food restaurant and she had a large bruise on her forehead. Mother was asleep in the car. When law enforcement arrived, Mother was "fidgeting" and "appeared confused." DSS placed the child "into protective custody" because of Mother's "chronic substance abuse problem."

On January 8, 2014, the trial court ruled that K.L. "is a person described by Section[] 300 . . . [subdivisions (b) and (g)]," and that "detention of the minor[] is required."

In its revised findings and orders after dispositional hearing, the trial court found: 1) K.L.'s "out-of-home placement is necessary," and 2) the "current placement is appropriate."

K.L.'s father was convicted of robbery in 2011. He was released from state prison on March 14, 2014. DSS recommended father not receive family reunification services because: 1) he had "a violent criminal history," 2) he "never had a relationship with [K.L.]," and 3) "reunification with him would not be in [K.L.'s] best interest." It recommended Mother be bypassed from receiving reunification services because of her chronic drug abuse problem and her resistance to treatment.

At a contested hearing, Mother testified that using "meth" was part of her "lifestyle" from 1999 until August 2010. She next used methamphetamine in November 2013. She was arrested for "being under the influence" when she was pregnant with K.L. Her parental rights to another child were previously terminated because of her drug abuse problem. She said she used methamphetamine four times since November 2013. Mother testified she received "a great deal of education about how to deal with [her] addiction."

2

But she admitted that history of drug rehabilitation services "didn't seem to help [her] avoid the use of methamphetamine" in November 2013.

Melissa De Poorter, a DSS social worker, testified Mother had received various drug rehabilitation treatment services. But after completing those programs, "[Mother] relapsed *each time*." (Italics added.)

The trial court denied reunification services for Mother, finding it would not be in K.L.'s best interests. It found the DSS assessment to bypass Mother from receiving reunification services because of her chronic drug abuse addiction was proper. (§ 361.5, subd. (b)(13).) The court scheduled a section 366.26 hearing.

Mother filed a section 388 petition to modify the order denying reunification services. She claimed she had a "bond" with the child and had continued to attend drug and alcohol classes and counseling. The trial court scheduled the hearing on her section 388 petition to take place during the section 366.26 hearing.

Angella Holmes, a DSS adoption expert, testified Mother's modification petition should be denied. She said Mother "had been resistant to previous drug treatment." After the court bypassed her for reunification services, Mother "relapsed," she was "under the influence" of a controlled substance, and was arrested. Holmes said Mother "has been noncompliant" with her substance abuse testing. She said Mother missed "41 percent" of her drug tests, missed "individual and group sessions" for drug rehabilitation, and did not attend "a medication management appointment."

Emily Maddox, a drug and alcohol program supervisor, testified Mother graduated from "a sober living program." Mother failed to appear for eight drug tests. Maddox said so many unexcused absences "may be related to relapse."

Mother testified she has been "assessed by County Mental Health" and was "awaiting treatment." She had enrolled in college classes and had attended drug and alcohol treatment, but she had "a relapse" in July. Her missed drug tests were the result of "anxiety and depression" over the prospect of losing parental rights for her daughter.

In its "366.26 WIC Report," DSS recommended that "adoption be ordered as the permanent plan [for K.L.]." It said that "[s]everal families have expressed interest

3

in providing a permanent home" for K.L. K.L. was "adjusting well and is making progress in her emotional regulation."

The trial court denied the section 388 petition and found K.L. "is an adoptable child." It terminated Mother's parental rights.

*The Section 388 Petition*

Mother contends the trial court abused its discretion by denying her section 388 petition for a modification of the order that had bypassed reunification services. We disagree.

A parent may file a petition to modify an order of the juvenile court. (§ 388.) But a modification will not be granted unless the "proposed change is in the best interests of the child." (*Id.*, subd. (a)(2).) "The petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)

"After termination of services, the focus shifts from the parent's custodial interest to the child's need for permanency and stability." (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685.) "The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (*Id.* at pp. 685-686.)

Here the trial court found Mother had "a long history of methamphetamine use" and "a lack of dealing with it appropriately." It found she missed drug testing appointments.

These findings are supported by the record. Holmes testified that Mother had a history of being "resistant" to drug treatment. Mother received drug treatment services, but began using drugs again in 2013. After the trial court bypassed reunification services, Mother had another relapse in 2014. She missed several drug tests. Maddox testified Mother also recently missed group sessions on September 22, September 25, and September 29, 2014. Mother testified that she graduated from a "sober living" treatment facility in 2003. She gave birth to another child in 2004. But she began using drugs one month after that child was born. DSS had to remove that child from the home. Mother

4

admitted using drugs while she was pregnant with K.L. In its section "366.26 WIC Report," DSS said Mother "is suffering from a chronic substance abuse problem."

The trial court could reasonably find Mother had not shown progress in overcoming the drug addiction problem, which required DSS to remove K.L from the home. It also could find Mother had not shown the ability to provide a safe environment for the child. In its section 366.26 WIC report, DSS said, "There were *twenty-seven prior referrals alleging abuse and/or neglect* as to [K.L.'s] mother in regard to [K.L.] and her two older half-siblings," and the two older siblings "are both residing with alternate caregivers due to [Mother's] inability to provide safe care for them." (Italics added.) DSS said Mother is "unable to care for or protect" K.L. Mother has not shown an abuse of discretion.

*Adoptability*

Mother contends the trial court erred by finding K.L. was likely to be adopted. We disagree.

On appeal, the issue is whether there is substantial evidence to support the finding that the child is likely to be adopted within a reasonable time. (*In re Erik P.* (2002) 104 Cal.App.4th 395, 400.) "'In resolving this issue, the court focuses on *the child*--whether his age, physical condition and emotional state make it difficult to find a person willing to adopt him.'" (*In re Josue G.* (2003) 106 Cal.App.4th 725, 733.) To make the required finding, "'it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent "waiting in the wings."'" (*Ibid.*)

DSS said the "likelihood of adoption is high." It noted that "[s]everal families have expressed interest in providing a permanent home" for K.L. DSS said, "[K.L.] is highly adoptable. She is curious, sweet, young, healthy and affectionate." Moreover, K.L. is in "a prospective adoptive home."

Mother claims K.L. "had developmental delays in her behaviors that were extremely challenging." But DSS said K.L. "appears to be adjusting well and is making progress in her emotional regulation." Holmes testified it was important for the child to

5

have "stability" and "permanency" in dealing with her developmental "special needs." She said the child initially had some "acting-out behaviors," but that conduct "lessened as soon as she was placed into care" at a foster home. She said a therapist indicated that the child's improvement was the result of "the structured environment that was provided in the foster home." Mother has not shown error.

The judgment and orders are affirmed.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

6

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____


Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.


Rita L. Neal, County Counsel, Leslie H. Kraut, Deputy County Counsel, for Plaintiff and Respondent.