Filed 5/13/22  In re K.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.C. et al., Persons Coming Under the Juvenile Court Law. | C094953 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>C.C.,<br><br>    Defendant and Appellant. | (Super. Ct. Nos. JD240451, JD240452, JD240453) |

1

Appellant C.C. (mother) appeals from the juvenile court's orders terminating her parental rights and freeing the three minors for adoption. (Welf. & Inst. Code, §§ 366.26, 395.)[1] Mother contends the juvenile court erred in failing to consider and apply the beneficial parental relationship exception to adoption. Finding the claim forfeited, we will affirm the juvenile court's orders.

BACKGROUND

On February 14, 2020, the Sacramento County Department of Child, Family and Adult Services (Department) filed a juvenile dependency petition under section 300, subdivisions (b)(1), (g), and (j) for each of mother's three children: Z.C. (born in April 2015), A.C. (born in September 2016), and K.C. (born in March 2018). The petitions alleged mother left the minors with an unrelated male who was found with the minors while unconscious due to the influence of prescription drugs, which were easily accessible to the minors. On February 24, 2020, the juvenile court ordered the minors detained with supervised visitation for mother.

*Initial Social Worker Reports*

The social worker asked Z.C. shortly after his detention whether he wanted to go back with his mother and he said, "I like it better here." The social worker also interviewed Z.C. for the jurisdiction and disposition report. Z.C. said he felt safe in his current placement but he cried "about my mom and dad a lot." When the social worker asked Z.C. "who he wants to live with, [Z.C.] excitedly reported, 'I want to live with my mom and dad forever!' Further, [Z.C.] reported he wishes to visit both his mother and his father. When asking [Z.C.] who the most important people in his life are, the child yelled with excitement, 'my mom!' "

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

An addendum to the jurisdiction and disposition report noted that in April and May 2020 mother tested positive for cannabis twice, negative for all substances once, and failed to test three times. The report also noted that in March and April 2020 mother had spoken with the minors six times but had failed to answer calls to talk with the minors eight times.

An addendum filed on October 8, 2020, indicated the minors had been doing well in their foster care placement. Z.C. was having three to four tantrums a day when originally placed, "but now has one a week, if that." K.C. and A.C. were attending a daycare program where they were learning and making friends. Mother had been taking advantage of some recovery services but failed to test six times in August and September 2020.

The social worker's December 17, 2020, progress report stated mother tested positive for methamphetamine/amphetamine and cannabis twice in December. She visited with the minors one time per week and actively engaged with them during the visits, though she did miss a few visits. The report concluded mother had been resisting "participating in reunification services" since the beginning of the case, continued to believe she did nothing wrong, and had failed to address her substance abuse issues thus far.

On April 5, 2021, the social worker filed a status review report recommending reunification services be terminated and an adoption plan sought for the minors. Mother was homeless but still connected to the same unrelated male with whom she had left the minors unsupervised in February 2020. She had been in an altercation with the maternal great-grandmother that led the great-grandmother to fear for the minors' safety, believing the minors should not be returned to mother "as she struggles with chronic substance abuse and mental health issues and engages in possible prostitution." Mother also tested positive again for methamphetamine/amphetamine in February and March 2021.

The report also stated the minors were doing well in their current placement and the resource parents were willing to provide permanency and had applied for de facto parent status. The minors were bonding with the resource parents and interacting better with each other and the neighborhood children.

Mother continued to "consistently visit[] the children" except for December 2020, when she missed four visits. The social worker reported mother's interactions with the minors were "mostly appropriate" but there had "been some glaring incidents at the visits that usually surround[ed] the mother later being found to be under the influence of illegal substances." The social worker believed the risk of abuse and neglect of the minors if returned home was "very high" due to "mother's failure to address her substance and mental health issues." Mother also "has yet to fully participate in any service." The minors were doing better physically, mentally, and emotionally in their new placement. The Department recommended termination of reunification services.

On May 27, 2021, the juvenile court held a hearing under section 366.21, subdivisions (e) and (f), and ordered termination of mother's reunification services, setting a section 366.26 selection and implementation hearing.

*Section 366.26 Report and Hearing*

On September 13, 2021, the Department filed a section 366.26 report recommending termination of parental rights. The report stated mother was required to RSVP for visits because "she has a history of not showing up to scheduled visits with the children." She did attend 13 visits between May and August of 2021 but failed to RSVP to six other visits. There were no major issues during visits but the minors "are often disappointed and negative behaviors increase when the mother does not show up for visits," and when she did visit "it takes the children a few hours to calm down after." According to another social worker, one of the minors' older siblings "has always been more of a mother figure to the children than the mother." The report also noted the caretakers, who "love and adore" the minors, were interested in adopting the minors.

4

On September 23, 2021, the juvenile court held the section 366.26 hearing. Mother did not attend, though her attorney texted, called, and e-mailed her. The Department's counsel requested parental rights be terminated because, "[a]s indicated in the [section 366.26 report], the children are likely to be adopted and no exception to adoption exists"; the minors' attorney agreed with the Department. Mother's counsel stated: "On behalf of [mother], your Honor, I would be entering objections to the termination of parental rights, and I would also specifically object that these three children are specifically adoptable. And with that I would submit." The juvenile court agreed with the Department's recommendation and found by clear and convincing evidence the minors were likely to be adopted, "termination of parental rights would not be detrimental to the children," ordered adoption as the permanent plan, and terminated mother's parental rights.

Mother timely appealed. The case was fully briefed in April 2022 and assigned to this panel that same month. The parties did not request argument.

DISCUSSION

Mother argues the juvenile court failed to consider the beneficial parental relationship exception to termination of parental rights, which she contends applies here because she regularly visited with her children and they would benefit from continuing the relationship with her. The Department responds that mother forfeited this argument because it was not asserted at the 366.26 hearing, and we agree.

At a section 366.26 hearing, the juvenile court "shall terminate parental rights and order the child placed for adoption" if it finds "by a clear and convincing standard, that it is likely the child will be adopted." (§ 366.26, subd. (c)(1).) Juvenile courts should decline terminating parental rights only in "exceptional circumstances" where the parent "can establish termination would be detrimental to the child under one of the statutory exceptions." (*In re D.P.* (2022) 76 Cal.App.5th 153, 163 (*D.P.*).) One such exception is the beneficial parental relationship exception, which applies when "[t]he parents have

5

maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) "[T]he parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*In re Caden C.* (2021) 11 Cal.5th 614, 636-637 (*Caden C.*).) There are three elements to establish this exception: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*Caden C.,* at pp. 631.)

We apply a mixed standard of review: " '[A] substantial evidence standard of review applies to the first two elements' and the third element, given it is a hybrid of factual determinations and discretionary balancing, is 'properly reviewed for abuse of discretion.' [Citation.] 'But where, as with the parental-benefit exception, "the appellate court will be evaluating the factual basis for an exercise of discretion, there likely will be no practical difference in application of the two standards." ' " (*D.P., supra*, 76 Cal.App.5th at p. 165.)

Parents must raise and establish the beneficial relationship exception. (*Caden C., supra*, 11 Cal.5th at pp. 636-637.) "The juvenile court does not have a sua sponte duty to determine whether an exception to adoption applies." (*In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295.) And this exception requires a fact-intensive inquiry as "understanding the harm associated with severing the relationship is a subtle enterprise—sometimes depending on more than just how beneficial the relationship is." (*Caden C.,* at p. 634.) Consequently, failure to raise the exception at the hearing not only deprives "the juvenile court of the ability to evaluate the critical facts and make the necessary findings, but it also deprives this court of a sufficient factual record from which to conclude whether the trial court's determination is supported by substantial evidence." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 403 (*Erik P.*).)

6

Thus, it was mother's burden at the hearing to establish the exceptional circumstances justifying the exception. She did not even argue the exception applied, let alone present any relevant evidence. For example, the first element of the analysis concerns whether " 'parents visit consistently,' taking into account 'the extent permitted by court orders.' " (*Caden C., supra*, 11 Cal.5th at p. 632; *In re I.R.* (2014) 226 Cal.App.4th 201, 212 ["Regular visitation exists where the parents visit consistently and to the extent permitted by court orders"].) Mother acknowledges in her brief on appeal there "were no details about how often the visits were to occur" and "[t]here was no information about the quantity of visits from January 2021 through April 2021." But it was *mother's burden* to provide such evidence, not the court's or the Department's. The evidence relevant to the other two elements is also bare and ambiguous. There are some statements that *could* indicate the minors benefit from the relationship such that termination might be detrimental, but some of these statements occurred quite early in the case; further, there is also evidence to the contrary.

We cannot perform this fact-intensive analysis in the first instance with a record that has not been adequately developed by mother. Parents asserting this exception generally present testimony at the section 366.26 hearing and counsel make arguments discussing the evidence and its applicability to the exception. (See, e.g., *In re J.D.* (2021) 70 Cal.App.5th 833, 849-851; *In re D.M.* (2021) 71 Cal.App.5th 261, 267-268.) Parents are also encouraged to request a bonding study to aid the court in this difficult and consequential analysis. (*Caden C., supra*, 11 Cal.5th at p. 633, fn. 4 ["Trial courts should seriously consider, where requested and appropriate, allowing for a bonding study or other relevant expert testimony"].) We do not have the benefit of any such evidence, and most importantly, we do not have the benefit of the juvenile court's analysis of this claim. (*Erik P., supra*, 104 Cal.App.4th at p. 403 ["not only does this deprive the juvenile court of the ability to evaluate the critical facts and make the necessary findings, but it also

7

deprives this court of a sufficient factual record from which to conclude whether the trial court's determination is supported by substantial evidence"].)

Although mother asserts in her reply brief that her counsel's general objection to termination of parental rights was sufficient to preserve this issue on appeal, we disagree. There are several exceptions to termination of parental rights, each looking at completely different factual scenarios. Establishing a beneficial parental relationship would require a wholly separate analysis than, for example, establishing termination would be a "substantial interference with a child's sibling relationship." (§ 366.26, subd. (c)(1)(B)(i); *Erik P., supra*, 104 Cal.App.4th at p. 402 ["The application of any of the exceptions enumerated in section 366.26, subdivision (c)(1) depends entirely on a detailed analysis of the relevant facts by the juvenile court"].) Permitting such a bare and generalized objection to sufficiently preserve one specific exception on appeal would effectively require us to impose a duty on juvenile courts to examine every possible exception whenever a parent merely objects to termination. This would impermissibly permit parents to circumvent their burden to prove a specific exception applies at the section 366.26 hearing.

Lastly, we acknowledge the Supreme Court provided extensive analysis clarifying the beneficial parental relationship exception in *Caden C.* Some appellate courts have reversed terminations of parental rights occurring after *Caden C.* in part to provide juvenile courts the benefit of this analysis. (*D.P., supra*, 76 Cal.App.5th at p. 169 ["We recognize the juvenile court did not have the benefit of *Caden C.* when making its ruling, which further justifies remand"].) No such considerations are applicable here because the section 366.26 hearing took place four months *after* the Supreme Court filed *Caden C.* This should have instead put mother on notice to address this exception if she thought it

could apply.[2]  Mother has not established a justifiable excuse for her failure to make this specific argument at the hearing, nor a basis for us to ignore this failure.

## DISPOSITION

The juvenile court's orders are affirmed.


_____/s/_____

Duarte, J.


We concur:


_____/s/_____

Hull, Acting P. J.


_____/s/_____

Renner, J.

---

[2] Mother does not claim ineffective assistance of counsel on appeal.