Filed 3/9/22  In re S.D. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re S.D. et al., Persons Coming Under the Juvenile Court Law. | C093792 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>A.D.,<br><br>        Defendant and Appellant. | (Super. Ct. Nos. 19JVSQ3164101, 19JVSQ3164201) |

Appellant A.D. (mother) appeals from juvenile court orders under Welfare and Institutions Code[1] section 366.26 terminating her parental rights as to two of her children and freeing them for adoption.  Mother requests remand for consideration of *In re Caden C.* (2021) 11 Cal.5th 614  (*Caden C.*), which was decided after the hearing at issue here, but concedes she did not raise the beneficial parental relationship exception to the statutory preference for adoption in the juvenile court.  She contends her trial counsel was ineffective in failing to raise and argue the exception.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

We will affirm the juvenile court's orders.

BACKGROUND

Mother has four children, M.C., K.D., S.D., and P.D., by three different fathers. This appeal challenges the juvenile court's orders only as to S.D. and P.D. Kenneth G. (father) is the father of both S.D. and P.D. The petition mistakenly identified Ryan D. as P.D.'s father.

On October 3, 2019, the Shasta County Health and Human Services Agency (Agency) filed a section 300 petition on behalf of three of the children, including S.D. (aged five years old) and P.D. (aged eight months old). The petition alleged mother had a substance abuse problem that interfered with her ability to provide regular and adequate care for the children (*id.*, subd. (b)(1)), and that the fathers' whereabouts were unknown and the children had been left without any provision for support (*id.*, subd. (g)).

The detention report recommended that the minors be detained from mother's care and custody. An unannounced visit to the home by two social workers on September 20, 2019, confirmed that the house was cluttered and filthy, with dog feces throughout the house, standing water in the bathtub, and THC on a nightstand. There was evidence that mother had been in multiple car accidents after falling asleep at the wheel because she stayed up all night driving around, that law enforcement had twice been to the house to follow up on reports of a dirty home, and that mother often had multiple people visiting throughout the night.

The juvenile court detained the children, finding there was a substantial danger to the physical health of the children or that they were suffering severe emotional damage, and that there were no reasonable means by which the children's physical and emotional health could be protected without removing them from the parents' physical custody. The court further found mother had a substance abuse problem that interfered with her ability to provide regular and adequate care for the children, and that the children's fathers' whereabouts were unknown as was their ability to care for or protect the children

2

from abuse or neglect. The juvenile court ordered initial case plan services be provided to reunify the children with the family.

The matter was set for a combined jurisdiction and disposition hearing on November 19, 2019, which was later continued to the following month. A November 2019 jurisdiction report recommended that the juvenile court find the children dependents and order continued placement out of mother's home. At that point, S.D. and P.D. were in separate foster care homes.

The jurisdiction report recounted the family's drug related activity, positive drug tests, and overall neglect in their unsanitary home. On September 27, 2019, mother tested positive for THC and amphetamine, and on October 4, 2019, she tested positive for those same substances plus methamphetamine. Mother failed to drug test on October 31, 2019, as requested by the social worker. S.D.'s October 2019 hair follicle sample also tested positive for methamphetamine.

A December 2019 disposition report recommended continued out-of-home placement and family reunification services for mother but not father. By that time, S.D. and P.D. were in the same foster care home, which was meeting their needs. According to the disposition report, mother repeatedly failed to contact the social worker to work on her case plan, and she failed to drug test as requested. Mother had failed to attend the parent court orientation, and was unable to complete the substance abuse assessment, which she was in the process of rescheduling. She had completed all required classes for the parent engagement group as of December 5, and had also participated in her strength based assessment. Mother failed to show for a child and family team meeting scheduled on November 21, 2019, and the meeting was in the process of being rescheduled. She was requested to drug test on November 6 and November 8; she failed to show on the first date and tested presumptive positive for methamphetamine and other substances on the latter date. Mother attended her visitation with S.D. and P.D. regularly.

After several continuances, the juvenile court conducted a combined jurisdiction and disposition hearing on February 14, 2020. At the hearing, mother's appointed counsel informed the juvenile court that mother had again failed to meet with him, and that he was submitting on the reports as to both jurisdiction and disposition. Counsel for the children submitted on the Agency's recommendations. Having reviewed both the jurisdiction and disposition reports, the juvenile court sustained the petition allegations, continued the children in out-of-home placement, and ordered services for mother.

At the end of July 2020, the Agency submitted a six-month status review report, which recommended terminating mother's services and setting a section 366.26 hearing to terminate parental rights. The recommendation was based on mother's inability to complete required case plan services as well as her inability to demonstrate behavior change.

Since the jurisdiction/disposition hearing, mother had failed to attend the parent court orientation. She had also missed two scheduled child and family team meetings. While she had completed all required classes for the parent engagement group, her weekly progress reports revealed she participated minimally in the group, if at all. It took her nine attempts to complete an interview with a drug and alcohol counselor, who recommended that mother attend and complete residential treatment and then outpatient treatment, engage in random drug testing, and attend at least two community based meetings per week. Between January and March, mother missed four scheduled appointments for visit coaching.

In June 2020, mother entered two different residential treatment programs, but was unsuccessful at both. A report from one facility noted that mother was unable to stay in inpatient treatment longer than two weeks before leaving, and that she did not understand her addiction or what role it played in her life. Because mother did not complete her residential treatment programs, referrals for parenting and individual therapy could not be submitted on her behalf.

Mother visited consistently throughout the month of July and demonstrated a greater ability to be aware of and supervise the children. However, she did not respond to the family worker about the case and failed to participate in visit coaching in order to increase the frequency of her visits. She maintained irregular contact with the Agency and her social worker. The status report noted that S.D. and P.D. had bonded with their caregivers. They also had bonded with the caregivers' daughter with whom they had developed a sibling-like relationship.

At a hearing in August 2020, mother retained private counsel and asked to set a contested six-month review hearing. Her retained counsel explained that she was in an intensive outpatient program and had tested clean seven times since June 3, 2020. The juvenile court continued the matter.

After failing to successfully complete residential treatment or intensive outpatient treatment, mother started a lower intensity outpatient recovery program on September 23 and moved into their sober living house on October 6, 2020. Mother's communication with the family case worker had improved. She participated in visit coaching at the beginning of October and was able to increase her visits to one and one-half hours weekly. Despite that progress, the addendum report continued to recommend that services to mother be terminated and a section 366.26 hearing be set as mother had not shown a sustained behavior change over the course of the dependency proceedings. Although the children were removed from her custody in October 2019, she did not engage in services until approximately a year later. The juvenile court set a contested combined six/12-month review hearing for November 13, 2020.

On the day of the contested hearing, mother's counsel filed a response to the detention report and addenda, disputing various factual statements and allegations in the reports. Mother attached several exhibits, including negative drug tests, letters regarding her outpatient treatment, and a letter showing she had attended two therapy sessions since November 2, 2020. Mother requested that services be continued and that upon

completing her outpatient program and parenting education, the juvenile court return her children to her custody.

At the hearing, the Agency's counsel questioned whether mother's retained counsel was specially certified to handle dependency matters. Mother's counsel indicated he lacked such certification but mother chose to proceed with him as her counsel.

After considering the evidence, the juvenile court found that mother had been offered reasonable services and that active efforts had been made to prevent the breakup of the family, but that mother had failed to comply with the case plan and complete the necessary services such that it was not substantially probable that the children would be returned to her care before December 3, 2020. The juvenile court terminated services and set the section 366.26 hearing and permanent plan review for March 12, 2021.

In December 2020, prior to the section 366.26 hearing, mother relieved her retained counsel and the court appointed attorney Kelsey Walsh to represent her. In January 2021, mother filed a section 388 motion, asking the juvenile court to reinstate services for her. The juvenile court set a contested hearing on mother's section 388 motion at the same time as the section 366.26 hearing.

On March 1, 2021, the Agency filed a section 366.26 report and permanent plan review report recommending that P.D. and S.D. be continued as dependents of the court in foster care, that mother's parental rights be terminated, and that the court order a permanent plan of adoption. The report recounted mother's history of not fully engaging in services and noted that she had not displayed a sustained behavior change over time. The report also assessed P.D.'s and S.D.'s proposed adoption by their foster caregivers and opined that there was not a significant parental relationship that weighed against the children's interest in a permanent, stable placement.

The juvenile court denied mother's section 388 motion, finding that mother had not demonstrated that it was in the children's best interest to grant the request. Although

circumstances were changing regarding mother's sobriety, the juvenile court found that they had not changed sufficiently to warrant granting the request. The juvenile court then proceeded with the section 366.26 hearing as to P.D. and S.D. The juvenile court terminated mother's parental rights and identified adoption as the permanent plan.

DISCUSSION

Mother requests remand for consideration of *Caden C., supra*, 11 Cal.5th 614, which was decided after the hearing at issue here, but concedes she did not raise the beneficial parental relationship exception to the statutory preference for adoption in the juvenile court. She contends her trial counsel was ineffective in failing to raise and argue the exception, and adds that because "there can be no possible reason given for trial counsel's actions other than a subjective and uninformed belief that [the exception] could not be argued" the claim is cognizable on direct appeal and she need not seek habeas corpus relief to address the contention.

When a parent loses custody of a child and has not sufficiently overcome the deficiencies that led to removal, the dependency statutes require the juvenile court to hold a hearing under section 366.26 to determine whether to terminate parental rights, making way for adoption, or to maintain parental rights and select another permanent plan. (*Caden C., supra*, 11 Cal.5th at p. 625.) If the court finds the child is adoptable, it *must* terminate parental rights unless at least one of a series of enumerated exceptions applies. (§ 366.26, subd. (c)(1).) One such exception is the beneficial parental relationship exception. (*Id.*, subd. (c)(1)(B)(i).) "This exception applies where the parent has maintained regular visitation and contact with the child, the child would benefit from continuing the relationship, and termination of that relationship would impose a detriment on the child." (*Caden C.*, at p. 625.)

To prove that the beneficial parental relationship exception applies, the parent must show there is a significant, positive emotional attachment between the parent and child. (*In re Beatrice M*. (1994) 29 Cal.App.4th 1411, 1418-1419.) The parent must also

7

prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 (*Autumn H.*).)  "In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.  If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.*, at p. 575.)  On the other hand, when the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent-child relationship, the court should order adoption.  (*Caden C., supra*, 11 Cal.5th at pp. 633-634; *Autumn H.*, at p. 575.)  A parent's continued struggles with the issues leading to dependency are not a categorical bar to applying the beneficial parental relationship exception.  (*Caden C.,* at p. 637.)

It is the parent's burden to raise any applicable exception to the preferred plan of adoption during the section 366.26 hearing.  (*In re Erik P.* (2002) 104 Cal.App.4th 395, 403 (*Erik P.*) [parent's burden to raise any relevant exception at the selection and implementation hearing]; *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368 [" 'The permanent plan preferred by the Legislature is adoption' " (italics omitted)].)  The failure to raise an exception forfeits the issue on appeal.  (*Erik P.*, at p. 403; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [dependency matters are not exempt from forfeiture rule], superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 961-962.)

Mother correctly notes that appellate courts may address pure legal questions raised for the first time on appeal.  (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 298, fn. 2.)  But application of the beneficial parental relationship exception depends entirely

8

on a detailed analysis of the relevant facts by the juvenile court. As *Autumn H.* explains, and mother acknowledges, the beneficial parental relationship exception "must be examined on a case-by-case basis, taking into account the many variables which affect a parent[-]child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent[-]child bond." (*Autumn H., supra*, 27 Cal.App.4th at pp. 575-576.) Thus, the applicability of the exception is not a pure question of law. (*Erik P., supra*, 104 Cal.App.4th at p. 403.)

Mother further argues that applying forfeiture here would deprive her of due process because *Caden C., supra*, 11 Cal.5th at page 614 altered the way a juvenile court views evidence when a parent raises the beneficial parental child exception. But *Caden C.* did not impose a sua sponte duty on the juvenile court to consider the applicability of the beneficial parent child relationship exception, and there is authority to the contrary. (See e.g., *In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295 ["[t]he juvenile court does not have a sua sponte duty to determine whether an exception to adoption applies"]; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252 [no sua sponte duty to raise beneficial parental relationship exception to adoption]; see also, *In re Daisy D.* (2006) 144 Cal.App.4th 287, 291-292 (*Daisy D.*) [no sua sponte duty to raise sibling relationship exception to adoption]; *Erik P., supra*, 104 Cal.App.4th at p. 402 [same].)

Mother nevertheless argues her counsel's failure to raise the beneficial parental relationship exception to adoption constituted ineffective assistance of counsel, which she may raise in her direct appeal rather than through a petition for writ of habeas corpus. On the record before us, we disagree there was ineffective assistance of counsel.

A claim of ineffective assistance requires mother to establish both that counsel's representation fell below prevailing professional norms and that, in the absence of counsel's failings, a more favorable result was reasonably probable. (*Daisy D., supra*,

9

144 Cal.App.4th at pp. 292-293; cf. *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218; *Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674].) Where " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) "A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*Id.* at pp. 266-267.)

Here, nothing in the record indicates that counsel was deficient in declining to assert the beneficial relationship exception or that a more favorable result was probable. Mother argues it is irrelevant whether her attorney may have assessed the exception and determined it was not worth making, but it is well settled that counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be unsuccessful. (*People v. Price* (1991) 1 Cal.4th 324, 387.) Mother's contention lacks merit.

## DISPOSITION

The juvenile court's orders are affirmed.

_____/S/_____
MAURO, Acting P. J.

We concur:

_____/S/_____
DUARTE, J.

_____/S/_____
RENNER, J.

10