Filed 2/13/24  In re L.L. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re L.L., a Person Coming Under the Juvenile Court Law. | B329878 c/w B330968 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP01556A) |
| Plaintiff and Respondent, | |
| v. | |
| K.L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

John Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

Mother appeals from the orders denying her petition under Welfare and Institutions Code section 388[1] and terminating parental rights to L.L. (minor).[2]  Mother contends the court abused its discretion when it summarily denied her section 388 petition, and it erred in denying application of the parental relationship exception to termination of parental rights under section 366.26, subdivision (c)(1)(B)(i).  Mother also contends that the court erroneously failed to ensure that the Los Angeles County Department of Children and Family Services (Department) complied with requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The details of the first portion of the dependency case involving mother and minor, from March 2019 to November 2021, are discussed in detail in a previous opinion of this court, in which we affirmed an order sustaining a petition under section 387.  (*In re L.L.* (March 30, 2023, B317886) [nonpub. opn.].)  For purposes of the current opinion, we limit our review of the facts and procedural background to an overview of minor's time in and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] On October 6, 2023, this court ordered mother's two appeals—the June 7, 2023 appeal of the order summarily denying mother's section 388 petition and the July 17, 2023 appeal of the order terminating of parental rights—consolidated.

2

out of mother's custody, and mother's participation in reunification services.

Minor was initially detained from mother in March 2019, when minor was six months old and mother was placed on an involuntary psychiatric hold. The juvenile court sustained petition allegations that mother was incapable of providing regular care to minor based on her March 2019 psychiatric hospitalization and her "mental and emotional problems including visual and auditory hallucinations, Post-Traumatic Stress Disorder, depression and anxiety," and that mother's "criminal activities, alcohol and illicit drug use" placed minor at risk of harm. At disposition, the court removed minor from mother's custody and ordered mother to participate in mental health counseling and services, including meeting with a case manager, therapist, and psychiatrist. Mother was to take all prescribed psychotropic medications, and participate in a 12-step drug and alcohol program and a parenting program.

Minor remained out of mother's custody from March 2019 until May 2021. The juvenile court terminated reunification services in November 2019, and mother was either not engaged or minimally engaged in reunification services until June 2020. After mother began complying with her case plan, the juvenile court partially granted her section 388 petition in November 2020, reinstating reunification services. Minor was placed with maternal family members (maternal grandfather, his wife and their adult daughter) in January 2021. Mother's visits were liberalized, and in May 2021, she regained custody of minor with juvenile court supervision.

Four months later, in September 2021, law enforcement found mother in a hotel room in Fresno, suffering from delusions.

Minor was detained from mother's custody and placed with a different foster family. In November 2021, the juvenile court sustained a section 387 petition, ordering minor to remain removed from mother's custody. The court ordered reunification services for mother, including monitored visits. Mother appealed, and we affirmed the court's orders. (*In re L.L.*, *supra*, B317886.)

In January 2022, the Department changed minor's placement to the home of her current caregivers and prospective adoptive parents. The social worker reported difficulties communicating with mother, whose erratic behavior and communications created a situation where a visitation schedule could not be established. The communication challenges continued into July 2022, and the Department recommended terminating reunification services and setting a permanency planning hearing under section 366.26. In August and September 2022, the Department was unable to contact mother. Mother, who had not been in recent contact with her attorney, did not appear at a contested review hearing in October 2022, and the court ordered mother's reunification services terminated.

In February 2023, mother made a remote appearance at the section 366.26 hearing, and provided a new address. The juvenile court continued the hearing, ordered mother to cooperate with the Department's efforts to provide notice, and ordered the Department to provide mother with a written visitation schedule. Mother agreed to weekly phone visits with minor. Minor was well bonded with her prospective adoptive parents. In May 2023, the Department reported that minor was not very engaged with mother during the phone visits, and made sarcastic comments to mother.

On May 16, 2023, mother filed a petition to change court orders pursuant to section 388, seeking to reinstate the reunification services the juvenile court had terminated in October 2022. In her description of changed circumstances, mother stated she had participated in programs to address her mental health and was making progress at an inpatient program, where she was receiving psychiatric care and individual counseling. The program also provided daily medication assistance and group therapy. Mother attached a January 27, 2023 letter from a New York City non-profit organization, stating that mother was enrolled into case management services on January 24, 2023 after referring herself for services. She also attached an April 20, 2023 letter from Los Angeles Centers for Alcohol and Drug Abuse, stating she had been enrolled in a crisis residential treatment program since April 12, 2023, and was receiving psychiatric care, individual substance use counseling, individual therapy, and case management services. The letter described mother's program as "a short term residential program focused on stabilization, medication management, and linking the client to additional resources and long term treatment." Mother's petition asserted that reinstating reunification services was in minor's best interests because mother had maintained regular contact with minor, and increased contact was in minor's interest to further strengthen her bond with her mother, who was "able and willing to apply her parental skills to take care of her child."

On May 17, 2023, mother's counsel argued mother was seeking a hearing on her section 388 petition. When the court asked mother's counsel about mother's visits with minor, mother's counsel acknowledged that the visits had only been

telephonic, but argued that mother had been asking for in-person visits and the Department had not set up in-person visits that worked for mother's schedule.  The Department urged the court to deny a hearing because mother's petition did not make out a prima facie case for relief.  The Department argued that mother had only recently enrolled in treatment, and a prior section 388 petition had already resulted in mother receiving additional reunification services in November 2020.  Minor's counsel joined in the Department's argument, noting that mother had only recently requested visits, and there was no bond between minor and mother.

The juvenile court denied mother's section 388 petition without a hearing, explaining that mother had only shown changing, not changed circumstances, and it was not in minor's best interests to further delay permanency where minor had been in foster care for longer than her time with mother and that minor showed no interest in speaking with mother.

At the section 366.26 hearing on July 17, 2023, mother objected to termination of parental rights.  The court found minor was adoptable, and that no parental bond exception applied.  The court ordered parental rights to minor terminated and mother filed a timely appeal.

## DISCUSSION

### A.    Mother's Section 388 Petition

Mother contends the court's summary denial of her section 388 petition without an evidentiary hearing was an abuse of discretion.  We disagree.

6

On receipt of a section 388 petition, the court may either summarily deny the petition or order a hearing. (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) The court may summarily deny the petition unless the petitioner makes a prima facie showing in his or her favor. (*Ibid.*; see also *In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) We review the summary denial of a section 388 petition for abuse of discretion. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158.)

A petition to change or modify a juvenile court order under section 388 must factually allege that there are (1) changed circumstances or new evidence to justify the requested order, and (2) that the requested order would serve the minors' best interests. (*In re G.B., supra*, 227 Cal.App.4th 1147, 1157; Cal. Rules of Court, rule 5.570(d)(1) & (2).) " 'A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause. [Citations.] It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing. [Citations.] While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests.' [Citation.] In determining whether the petition makes the required showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re K.L.* (2016) 248 Cal.App.4th 52, 61–62; see also *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 [" '[S]pecific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required"].)

When, as here, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's

overriding concern is the child's best interest. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*; *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1123.) Nonetheless, a parent may rebut the presumption that, once family reunification services have been terminated, reunification is not in the best interest of the child by showing that circumstances have changed and that the best interest of the child warrants further reunification services. (*In re Marilyn H., supra*, 5 Cal.4th at p. 309; *In re Stephanie M., supra*, 7 Cal.4th at p. 317.)

"[B]est interests is a complex idea" that requires consideration of a variety of factors. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530; see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832–833.) In determining whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner. (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446–447; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188–189.)

Here, the juvenile court did not abuse its discretion when it summarily denied mother's section 388 petition because the petition did not make a prima facie case of changed circumstances or minor's best interests. Minor was only six

months old when this dependency case was initiated and mother was involuntarily hospitalized for psychiatric problems. While mother was able to reunify with minor for a short period of time in May 2021, the child was removed again in September 2021, after mother stopped taking her psychiatric medications and became delusional. There is no evidence that mother re-engaged in services again until January 2023, at which point minor was over four years old and was well bonded with her current caregivers, who wanted to adopt her.

While mother's brief takes issue with the court's characterization of the nature and quality of mother's telephonic visits, the broader factual and procedural background establish that reinstating reunification services, and thereby further delaying permanency for minor, was not in minor's best interests. Having failed to establish a prima facie case on the best interests prong, mother was not entitled to an evidentiary hearing on her section 388 petition.

## B.    Parental Relationship Exception

Mother contends the juvenile court erred when it determined that the parental relationship exception to adoption did not apply. However, at the section 366.26 hearing, mother made only a very general objection to the termination of her parental rights, and never asserted the parental relationship exception to adoption nor offered to prove that it applied.

Mother bore not just the burden of asserting the parental relationship exception, but also the burden of proof to show that it applied. "The application of any of the exceptions enumerated in section 366.26, subdivision (c)(1) depends entirely on a detailed

9

analysis of the relevant facts by the juvenile court.  [Citations.]  If a parent fails to raise one of the exceptions at the hearing, not only does this deprive the juvenile court of the ability to evaluate the critical facts and make the necessary findings, but it also deprives this court of a sufficient factual record from which to conclude whether the trial court's determination is supported by substantial evidence." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 402–403.)  "The party claiming an exception to adoption has the burden of proof to establish by a preponderance of evidence that the exception applies."  (See *In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252.)  Having failed to raise the parental relationship exception in the juvenile court, mother cannot demonstrate that she met her burden of proof to establish that the exception applied.

Moreover, mother's argument on appeal focuses on the juvenile court's purported failure to make express factual findings about mother's visitation and a purported misunderstanding of the underlying facts.  We are unconvinced by any of mother's arguments, either because the juvenile court was not required to make express findings  (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156), or because mother has not shown that any error was prejudicial  (*In re Brianna S.* (2021) 60 Cal.App.5th 303, 315).

## C.    ICWA

Mother contends the Department failed to present substantial evidence it asked L.L.'s alleged father or extended paternal family members about possible Indian ancestry, as

required under ICWA and related California law.  We disagree that ICWA required the Department to engage in any ICWA inquiry efforts with regard to the alleged father here.

The definition of a parent under ICWA expressly excludes an "unwed father where paternity has not been acknowledged or established."  (25 U.S.C. § 1903(9); see also *In re Daniel M.* (2003) 110 Cal.App.4th 703.)  The alleged father in this case acknowledged he had a one-night stand with mother, but told the social worker he did not know if he was L.L.'s father, and he did not want to participate in the court proceedings.  Without any acknowledgment of paternity, the Department had no duty to conduct any inquiry under ICWA as to the alleged father or his extended family.

## DISPOSITION

The juvenile court's May 17, 2023 order denying mother's petition under Welfare and Institutions Code section 388, and the July 17, 2023 order terminating parental rights as to L.L. are affirmed.

NOT TO BE PUBLISHED.

MOOR, Acting P. J.

We concur:

KIM, J.

LEE, J.*

_____

\* Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.